RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0197p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

JOY DAVIS; JAMES DAVIS,
    *Plaintiffs-Appellants,*

   *v.*

VENTURE ONE CONSTRUCTION, INC.,
    *Defendant-Appellee*.

No. 08-1439

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-11950—Nancy G. Edmunds, District Judge.

Argued:  May 1, 2009

Decided and Filed:  June 3, 2009

Before:  KENNEDY, GIBBONS, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Alan B. Posner, KELMAN LORIA, PLLC, Detroit, Michigan, for Appellants.
Janet C. Barnes, SECREST WARDLE, Farmington Hills, Michigan, for Appellee.
**ON BRIEF:**  Alan B. Posner, KELMAN LORIA, PLLC, Detroit, Michigan, for Appellants.
Michael L. Updike, SECREST WARDLE, Farmington Hills, Michigan, for Appellee.

_____

## OPINION

_____

  KENNEDY, Circuit Judge.  Plaintiff Joy Davis[1] appeals the district court's grant of summary judgment to Venture One Construction, Inc. ("Venture One") on her claim for injuries sustained when, during a remodeling of her employer's premises, a door, temporarily removed and stored outside of the construction zone, fell on her because it

_____

[1]Joy Davis's husband, James Davis, is also a plaintiff in this action, claiming damages based on loss of consortium.

was stored upright and where, if placed there at all, it should have been laid on its side at an angle. Because the district court erred in concluding that defendant had no duty to plaintiff, we reverse and remand for further proceedings.

**I.**

Davis worked at a Pilot Travel Center in Monroe County, Michigan. Pilot had contracted with Venture One to remodel certain areas within the Pilot facility. The primary purpose of the contract was to relocate a Subway sandwich shop within the travel center. While construction was taking place, an original door was unhinged, removed, and leaned upright against a wall in a backroom outside of the construction zone. Unhinged doors should have been stored outside near the dumpster so as to be away from Pilot employees and members of the general public.

James Blank, proprietor of JDB Design, a subcontractor of Venture One[2] which performed finishing work on the remodeling job, testified in a deposition that he and one of his employees moved the unhinged the door and leaned it in the backroom. He testified that he did not move it out to the dumpster storage area because it was to be used at a later time and that Brian Ellis, the Venture One superintendent on the remodeling project, was aware that the door was stored there.

Ellis swore in an affidavit that neither he "nor any Venture One employee removed the door in question and stored it in the cooler area [in the backroom]." He further testified that he had no knowledge of the door's being leaned in that way, but there is a factual dispute regarding his knowledge. Ellis also testified that if he had seen a door propped vertically against an interior wall, he would have recognized it as a hazard and would have required someone to move it. Greg Kovach, President of Venture One, testified that Ellis, in his role as construction manager, was tasked with

---

[2]Blank was Venture One's servant. *See Saums v. Parfet*, 258 N.W. 235, 237-238 (Mich. 1935) (a servant is "in the employ and subject to the direction or control of another in any department of labor or business"). An independent contractor, contrasted with a servant, is not "subject to control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work." *Utley v. Taylor & Gaskin, Inc.*, 9 N.W.2d 842, 846 (Mich. 1943). Ample evidence exists that Ellis, if unsatisfied with the way Blank stored the door, could and should have dictated a different method of storage.

remedying hazards outside of the construction zone. Sherlyn Rice, the Subway manager at that Pilot location, testified that Ellis in fact entered the backroom "all the time" and failed to remedy the leaned door whose method of temporary storage he could not have failed to observe.

Remodeling work began on November 1, 2005. Rice testified that the door was removed and placed in the backroom on the first day of the remodeling job. On November 15, 2005, Davis went into the backroom to retrieve a dustpan and broom when the door fell on her back, causing her injuries.

## II.

Relying on Michigan law in this diversity case, and especially on *Fultz v. Union-Commerce Assocs.,* 683 N.W.2d 587 (Mich. 2004), the district court held Venture One had no duties toward Davis arising from its contract with her employer. The district court recognized, quoting *Fultz,* 683 N.W.2d at 592-93, that "the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on contract will lie." The district court acknowledged Davis's argument that while performing its contractual duties under the construction contract, defendant created a new hazard (1) when it allowed, for an extended period of time, the presence of an unsecured door outside the construction zone; and, relatedly, (2) when its site superintendent, Brian Ellis, failed to move the unsecured door to a proper storage location despite being asked to do so.

The district court ruled against Davis, holding that the door was not a new hazard because the plain language of the construction contract imposed the duty to initiate, maintain, and supervise construction including precautions for safety, and Davis had not shown that a duty is owed to her independent of the contract, as illustrated in *Bertz v. Norfolk Southern Railway,* No. 3:03CV7011, 2005 WL 1566758 (N.D. Ohio July 5, 2005). The district court explained that: (1) the construction contract contemplated the leaned-door hazard; and (2) this case represents a failure to carry out a contractual duty, as in *Fultz,* which does not give rise to a separate and distinct duty. Combining these

two considerations, the district court emphasized that Venture One's "failure to adequately initiate, maintain, and supervise safety measures during construction at the Pilot Travel work site" was a failure to provide the duties required by the contract in its contemplation of construction-site hazards.

The contract, in relevant part, states:

§ 10.1 SAFETY PRECAUTIONS AND PROGRAMS
§ 10.1.1 The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

§ 10.2 SAFETY OF PERSONS AND PROPERTY
§ 10.2.1 The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:
    1.      employees on the Work and other persons who may be affected thereby;
. . . .
§ 10.2.6 The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

The district court used this language from the contract to emphasize Venture One's duties to Pilot to supervise the safety aspects of the job. Per *Fultz*, the failure to perform a job does not create a new hazard, it merely leaves alone existing hazards or allows contemplated hazards to manifest themselves. The district court phrased its discussion of Venture One's actions in terms of what it did not do–the contractual duties of prevention and supervision it did not carry out.

**III.**

A premises owner and a contractor enter into a contract, and a third party is injured on the premises of the premises owner. The fundamental question at issue here is under what circumstances does a duty of care arise between the contractor and the third party? The Michigan Supreme Court "believe[s] [that] the 'slippery distinction'

between misfeasance and nonfeasance of a duty undertaken obscures the proper initial inquiry: Whether a particular defendant owes any duty at all to a particular plaintiff." *Fultz*, 683 N.W.2d at 592. Rather, "the 'separate and distinct' definition of misfeasance offers better guidance in determining whether a negligence action based on a contract and brought by a third party to that contract may lie because it focuses on the threshold question of duty in a negligence claim." *Id.* "[T]he threshold question is whether the defendant owed a duty to the plaintiff that is *separate and distinct* from the defendant's contractual obligations." *Id.* (italics supplied).

A seminal opinion on duty by Judge Cardozo explains when a duty of care arises to a third party. "[O]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *H.R. Moch Co. v. Rensselaer Water Co.*, 159 N.E. 896, 898 (N.Y. 1928) (quoting *Glanzer v. Shepard*, 135 N.E. 275, 276 (N.Y. 1922)). The "time-honored formula" of "the [relevant] distinction as one between misfeasance and nonfeasance" is "incomplete . . . , and so at times misleading." *Id.* Instead, the query to determine whether a duty arises to a third party "always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good." *Id.*

While time and physical proximity separate these decisions, they share the same analytic tradition. The Court in *Fultz* looked at *Hart v. Ludwig*, 79 N.W.2d 895 (Mich. 1956), which cited and borrowed heavily from *H.R. Moch*. *Hart*, 79 N.W.2d at 896-98 (discussing *H.R. Moch* and borrowing the example of the surgeon who failed to sterilize his instruments quoted by the Court in *Fultz*). *Rinaldo's Construction Corporation v. Michigan Bell Telephone Company*, 559 N.W.2d 647 (Mich. 1997), *Ferrett v. General Motors Corporation*, 475 N.W.2d 243 (Mich. 1991), and *Sherman v. Sea Ray Boats, Incorporated*, 649 N.W.2d 783 (Mich. 2002), recognized by the Court in *Fultz* as the authorities supporting the definition of "a tort action stemming from misfeasance of a contractual obligation as the violation of a legal duty separate and distinct from the contractual obligation," 683 N.W.2d at 591, all acknowledge *Hart* as the original source

of law for the "separate and distinct" test for duty in this context. *Sherman*, 649 N.W.2d at 787; *Ferrett*, 475 N.W.2d at 245-46; *Rinaldo's Constr.*, 559 N.W.2d at 657-58.

The rule in *Hart*, adopted and applied in *Fultz*, is summarized simply: the "defendant's failure to complete his contracted-for performance" does not give rise to a tort action for lack of duty. 79 N.W.2d at 898-99. Thought of in the framework of *H.R. Moch*: neither mere contract nor contract and its incomplete performance advances the defendant in its relationship with a third party to the point so as "to have launched a force or instrument of harm" such that a duty to the third party arises, separate and distinct from the defendant's contractual duty. 159 N.E. at 898. In *Hart*, the defendant made a verbal contract to care for and maintain the plaintiff's orchard. 79 N.W.2d at 896. He performed the contract for one season but refused to complete performance on the contract by returning for the following season. *Id.* The contract and one season of performance did not give rise to a duty allowing suit in tort by the orchard owner for economic loss resulting from the failure to perform the contract. *Id.* at 898-99. In *Fultz*, applying *Hart* in the context of a third-party plaintiff, a snow removal contractor contracted with a parking lot owner to remove snow and salt its lot. 683 N.W.2d at 589. The plaintiff slipped while walking in the icy lot, as the snow removal contractor had not "plowed the lot in approximately fourteen hours and had not salted the parking lot." *Id.* Prior performance was not relevant. The contract itself did not give rise to a duty to the plaintiff third party. Therefore, the failure of the snow removal contractor to perform the contract did not give rise to a duty to the plaintiff. *Id.* The basic import of both cases is that a duty to perform the contracted-for services between the contractor and the third party does not exist.

The rest of *Fultz* is dicta. The majority in *Fultz* appears to reject Restatement (Second) of Torts § 324A(b), which states that liability of a person to a third person arises when that person "has undertaken to perform a duty owed by [an]other to the third person." *See Fultz*, 683 N.W.2d at 594 (Kelly, J., concurring); *see also Fultz*, 683 N.W.2d at 592 n.2. Nevertheless, as the concurrence points out, when a contractor agrees to a contract, it agrees to perform services for a party but does not necessarily take

on that party's legal duties. *Id.* at 596 (Kelly, J., concurring). Whether a contractor can agree to take on the other party's legal duties, e.g., a snow plow contractor assuming the parking lot owner's legal duties to provide a reasonably safe lot, is an issue addressed by way of hypothetical in *Fultz* but was not manifest in the actual facts before the court in *Fultz*. Similarly, the majority's lack of discussion of the remainder of Restatement (Second) of Torts § 324A does not call into question its continuing viability in Michigan. A duty of due care attaches even to one who gratuitously undertakes to render services "if his failure to exercise reasonable care increases the risk of such [physical harm]" in the undertaking of the service or "the harm suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts § 324A(a), (c). The *Fultz* Court did not address these alternative avenues for a duty giving rise to liability because, for instance, in part, the snow plow contractor was not present at the time of the plaintiff's injury. To ascribe liability to the contractor then would be based entirely on its contract to plow the snow and salt the lot. The question of the contract qua contract's effect falls under Restatement (Second) of Torts § 324A(b).

This is a complicated way to arrive at a simple idea that is embedded deep within the American common law of torts and that has been part of Michigan law at least since 1956 with *Hart*: if one "having assumed to act, does so negligently," then liability exists as to a third party for "failure of the defendant to exercise care and skill in the performance itself." 79 N.W.2d at 898. A contract between two parties does not determine those parties' obligations with respect to the rest of the world. Contractual duties do not limit separately existing common law tort duties. The Court in *Fultz* did not wipe away fifty years (at minimum) of precedent on this point. The majority in *Fultz* might call this the creation of a "new hazard," *Fultz*, 683 N.W.2d at 593, and the concurrence might call it Restatement (Second) of Torts § 324A(a), *id.* at 594 (Kelly, J., concurring). Put differently, when a snow removal service contracts with a parking lot owner, a duty under contract arises for the snow removal contractor to perform the contracted-for services. No duty to maintain a reasonably safe parking lot of the lot owner to third parties is necessarily assumed by the contractor following the creation of the contract. No duty to perform the contract exists between the contractor and the third

party following the creation of the contract. No duty of due care of the contractor to the third-party bystander exists prior to or following the creation of the contract.  When the snow plow driver gets on his plow and performs the contract, however, he has a duty to perform it with due care toward third parties who might suffer personal injury resulting from negligence.

After these machinations, we return to where we began with a fuller understanding of the rule in *Fultz*.  A contract itself does not give rise to a duty of a contracting party to a third party to perform the services described by the contract.  A duty, "separate and distinct" from the duty to perform the contract, arises between a contracting party and a third party when the contracting party creates a "new hazard." *Fultz*, 683 N.W.2d at 593.  However, "new hazard" does not mean a "hazard not contemplated by the contract" as argued by Venture One.  Venture One claims that we should read the contract, note the safety precautions required by the contract, and determine that Pilot employee safety is considered by the contract, and thus risk of injury to them is not "new."  The requirement of a "separate and distinct" duty from a contractual duty refers to a "separate and distinct" legal duty, not a "separate and distinct" task or warranty as outlined in contract.  A "new hazard" is an inherent possibility in the performance of a contract.  One who assumes to act–where "to act" means more than making a contract–must exercise care and skill in taking such action. *See Hart*, 79 N.W.2d at 898.  A duty to act with due care is owed by a contracting party to third parties at risk of reasonably foreseeable harm stemming from the performance of the contract.  *See Valcaniant v. Detroit Edison Co.*, 679 N.W.2d 689, 693 (Mich. 2004) (citing *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99 (N.Y. 1928) (Cardozo, J.)).

Our case, then, is straightforward because Davis, the party opposing summary judgment, has presented evidence that raises a genuine issue of material fact on the element of duty.  She presents evidence that, while construction was taking place, an original door was unhinged, removed, and leaned upright against a wall in a backroom. The backroom was outside of the construction zone. Pilot employees accessed this backroom on a regular basis as part of their work.  Unhinged doors should have been

stored outside near the dumpster so as to be away from Pilot employees and members of the general public. The door was moved by James Blank, proprietor of JDB Design and a subcontractor chosen by Venture One, and his employee and leaned, unsecured and upright, in the backroom. Blank testified that he did not move it out to the dumpster because it was to be used at a later time, and that Ellis was aware that the door was stored there. Ellis testified that he did not know about the door, but if such a door was stored in the way that it was, he would have recognized it as a safety hazard. In short, persons working for Venture One increased the risk of physical injury outside of the construction zone to nearby Pilot employees which it did not remedy. Therefore, a duty of due care to Pilot employees from Venture One arose after persons working for Venture One stored the door and left it leaning there.

Venture One's creation of a new hazard distinguishes this case from *Fultz* and *Bertz*. In *Fultz*, the defendant snow removal service failed to prevent or remove the icy conditions that caused the plaintiff's fall. 683 N.W.2d at 593. In *Bertz*, the defendant security company failed to protect the plaintiff from an existing hazard when a train collided with a truck at a railroad crossing. 2005 WL 1566758, at *1. In neither case did the defendant create a hazard that we might call "new" from which a duty to a third party would arise, nor did the defendant owe the plaintiff a pre-existing duty of care. In *Bertz*, the hazard of a truck on train tracks was created by the truck driver, a third party him or herself, and the hazard of ice and snow resulted from the cold weather in *Fultz*. On the other hand, *Osman v. Summer Green Lawn Care, Inc.*, 532 N.W.2d 186 (Mich. App. 1995), is analogous. The contract in *Osman* made explicit that the defendant would "not be responsible for any damage or injury caused by slipping or falling on any pavement surface." *Osman*, 532 N.W.2d at 188. But in the course of actually performing the contract the snow plow contractor placed snow "on a portion of the premises when it knew, or should have known or anticipated, that the snow would melt and freeze into ice on the abutting sidewalk, steps, and walkway, thus posing a dangerous and hazardous condition to individuals who traverse those areas." *Fultz*, 683 N.W.2d at 593 (quoting *Osman*, 532 N.W.2d at 187). The defendant lacked a pre-

existing duty to the plaintiff, in contract or otherwise, but a duty arose out of the defendant's acts.

The hazard created by Venture One is a new hazard because it was outside of the construction zone and within the area that Pilot employees worked. The district court held that "Plaintiff was injured by the same sort of construction-site hazard that Pilot Travel contracted with Defendant to prevent." That defendant has assumed contractual obligations does not limit its legal duties owed to third parties in the execution of the contract. Just because a person acts pursuant to a contract does not mean other common law duties disappear. Further, the hazard did not exist on the construction site, it existed in a backroom that was outside of the construction zone. Nobody disputes this fact. Pilot employees who access the backroom off the construction site are like pedestrians who traverse "sidewalk[s], steps, and walkway[s]" which abut the premises upon which the defendant has been contracted to eliminate hazards. *Osman*, 532 N.W.2d at 704. Physical proximity of action is useful in determining the relationship of affirmative acts by the defendant to third parties in determining whether a duty then arises. Similarly, Ellis not only occupied the construction zone, according to Rice, he also entered the backroom, inspecting it, but not remedying the hazard. When a party so acts, it owes a duty of due care to those that it puts at foreseeable risk by hazards it creates, namely the unhinged, leaned door left unattended. *See H.R. Moch*, 159 N.E. at 898.

Common law duties in tort are determined without regard to contractual duties. Here, viewing the facts in the light most favorable to Davis, the contractor created the hazard when persons working for it leaned and left the door unsecured in an area outside the construction zone that it was aware that employees of Pilot used. For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings in accordance with this opinion.