RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0119p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

FILIPPO LEONE; ANNA LEONE,

           *Plaintiffs-Appellants*,

    *v.*

BMI REFRACTORY SERVICES, INC.,

           *Defendant-Appellee*.

No. 17-1632

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cv-11542—Sean F. Cox, District Judge.

Argued: April 24, 2018

Decided and Filed: June 22, 2018

Before: GILMAN, COOK, and GRIFFIN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Mark Granzotto, MARK GRANZOTTO, PC, Berkley, Michigan, for Appellants. Michael D. Bryant, WARD ANDERSON PORRITT BRYANT & LORD, Bloomfield Hills, Michigan, for Appellee. **ON BRIEF:** Mark Granzotto, MARK GRANZOTTO, PC, Berkley, Michigan, Jeffrey T. Meyers, Justin J. Hakala, MORGAN & MEYERS PLC, Dearborn, Michigan, for Appellants. Michael D. Bryant, WARD ANDERSON PORRITT BRYANT & LORD, Bloomfield Hills, Michigan, for Appellee.

───────────────

## OPINION

───────────────

COOK, Circuit Judge. This appeal concerns the duty of care a contractor owes to a third party under Michigan tort law. When a piece of scrap metal seriously injured Filippo Leone

while he was on the job, he sued the contractor that his employer had hired to clear the debris. Sitting in diversity, the district court granted summary judgment to the contractor, deciding that the contractor owed no duty of care to Leone because it created no new hazard. Leone and his wife timely appeal, arguing that the court interpreted Michigan law too narrowly. We agree, and REVERSE.

## I.    BACKGROUND

### A.  Facts

The events giving rise to this suit transpired inside a degasser, a large vat that Leone's employer, A.K. Steel, used to extract gas impurities from molten steel. Over twenty-four feet deep, with an interior diameter greater than eight feet, it was lined with layers of brick; the innermost layer—called the face brick—deteriorates with use and requires occasional replacement. The degasser's components include an alloy chute near the top of the vat that allows ingredients to be added to the molten steel during processing.

A.K. Steel hired BMI Refractory Services to perform a "tearout" of the degasser's deteriorated face brick. Although the contract did not include any work on the alloy chute, a BMI employee testified that his team would dislodge loose bricks or slag[1] from the vat's interior—including the chute—to ensure that nothing could fall on workers. He did not notice any loose slag on the chute during the tearout.

After BMI finished the tearout, A.K. Steel supervisors assigned Leone to reline the degasser with new face brick. For several days, Leone and his work crew frequently climbed ladders near the alloy chute. They never spotted any loose slag on the chute.

Nonetheless, twenty-one days after BMI completed its one-day job, a forty-pound piece of slag fell and struck Leone, injuring his back and right knee. Leone claims that the slag detached from the alloy chute, although he has no reason to believe that the slag was loose when BMI conducted its tearout. BMI theorizes that the slag may have been secure when BMI left the site but that a variety of "vibrational forces from within the AK Steel mill" may have shaken it

---

[1]Slag is scrap metal that accumulates inside the degasser after extended use.

loose afterwards. Because no molten metal could have created new slag between the end of BMI's tearout and the accident, the district court concluded (and the parties do not contest) that the offending slag must have existed when BMI's employees finished.

## B. Procedural History

Arguing that BMI negligently failed to remove the slag that struck him, Leone sued for his injuries; his wife asserted a derivative claim for loss of consortium. The district court concluded that BMI owed Leone no duty of care under Michigan law and granted it summary judgment. This appeal followed.

## II.    DISCUSSION

We review a district court's grant of summary judgment de novo, "view[ing] the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

### A. Whether a Michigan Contractor-Defendant Must Create a "New Hazard" to be Liable to a Third Party in Tort

In Michigan, as elsewhere, a prima facie negligence claim requires a plaintiff to show that "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke v. Ann Arbor Ceiling & Partition Co.*, 809 N.W.2d 553, 556 (Mich. 2011). Additionally, a contractor can be liable to a third party in tort only if it owed the third party a duty "separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie." *Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587, 592 (Mich. 2004). This "'separate and distinct' mode of analysis" replaced Michigan's prior emphasis on whether a contractor's actions amount to "misfeasance" or "nonfeasance" of a contractual obligation. *Id.* at 592; *Loweke*, 809 N.W.2d at 558 ("[A]fter *Fultz*, courts were to forgo the misfeasance/nonfeasance distinction and, instead, employ a 'separate and distinct mode of analysis.'" (internal quotation marks omitted) (quoting *Fultz*, 683 N.W.2d at 592)).

So, did BMI owe Leone a duty "separate and distinct" from its contractual obligations to A.K. Steel?  BMI maintains that it had no duty because it neither created a "new hazard" in the degasser nor exacerbated a pre-existing risk.  BMI highlights *Fultz*, where the Michigan Supreme Court held that a contractor owes a third party plaintiff no duty of care when the plaintiff's claim is rooted entirely in the contractor's non-performance of its contractual obligations.  683 N.W.2d at 591–92.  Thus, a woman who fell on an icy parking lot could not assert a negligence claim against the snow-plow company that completely failed to clear the lot, breaching its contract with the lot's owner.  *Id*. at 589.  *Fultz* distinguished another snow removal slip-and-fall case, *Osman v. Summer Green Lawn Care, Inc.*, 532 N.W.2d 186 (Mich. App. 1995), *overruled on other grounds by Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28 (Mich. 1999). There, the contractor "breached a duty separate and distinct from its contractual duty when it created a *new* hazard" due to how it moved snow on the premises.  *Fultz*, 683 N.W.2d at 593; *see also Osman*, 532 N.W.2d at 187.

In *Fultz*'s wake, Michigan-law cases where courts found that a contractor owed a "separate and distinct duty" also happened to involve contractors creating new hazards.  *See Loweke*, 809 N.W.2d at 555, 561 (holding contractor could owe a duty to plaintiff after it created a new hazard by stacking heavy boards that fell on plaintiff); *Davis v. Venture One Constr., Inc.*, 568 F.3d 570, 571 (6th Cir. 2009) (finding a duty where contractor created a new hazard in propping up a door that fell on plaintiff).

The district court considered these authorities and reasoned that "[i]n order to fall on the *Loweke/Osman* side of the line, Plaintiff would have to establish that BMI created some situation of peril that did not previously exist inside the vessel."  Because Leone's claim focuses only on BMI's failure to remove pre-existing slag, the court concluded that his negligence claim was actually a claim that BMI shirked its contractual obligations, and that BMI owed Leone no "separate and distinct" duty.  BMI's brief echoes the district court's analysis, advancing no other arguments in defense of the court's grant of summary judgment.

Leone suggests the district court erroneously interpreted Michigan precedent.  He argues that the court "t[ook] one example of how a contracting party may be said to create a duty in tort—by acting in such a way as to create a new hazard or a new situation of peril—and it made

that one example an absolute essential [element] of the plaintiffs' claim." In the process, he asserts that "the district court overlooked the long-established common law principles under which a party owes a duty of due care to a third party while performing on a contract."

We agree. The district court mistook a common feature of *Osman*, *Davis*, and *Loweke*— the defendant's creation of a new hazard—for a requirement. Although a contractor's creation of a new hazard can trigger a duty to third parties, the Michigan cases nowhere state that it is the *only* way that such a duty might arise. Instead, a contractor can be liable to a third party if "*any* legal duty independent of the contract existed." *Loweke*, 809 N.W.2d at 560 (emphasis added). Leone aptly posits that, even if BMI created no new hazard, it could still owe him a duty on some other basis.

## B. Whether BMI Owed Leone Any Duty

Michigan common law provides ample foundation for such a duty. In *Clark v. Dalman*, the Michigan Supreme Court described "the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." 150 N.W.2d 755, 760 (Mich. 1967). *Fultz* reaffirmed this principle, declaring that "[i]f one voluntarily undertakes to perform an act, having no prior obligation to do so, a duty may arise to perform the act in a nonnegligent manner." 683 N.W.2d at 591. Likewise, *Loweke* stated the matter clearly: "under the 'separate and distinct mode of analysis,' '[e]ntering into a contract with another pursuant to which one party promises to do something does not alter the fact that there [exists] a preexisting obligation or duty to avoid harm when one acts.'" 809 N.W.2d at 561 (alterations in *Loweke*) (quoting *Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.*, 559 N.W.2d 647, 658 (Mich. 1997)).

In other words, Michigan law incorporates the voluntary-assumption-of-duty doctrine, a "simple idea that is embedded deep within the American common law of torts . . . : if one 'having assumed to act, does so negligently,' then liability exists as to a third party for 'failure of the defendant to exercise care and skill in the performance itself.'" *Id.* (alteration in *Loweke*) (quoting *Davis*, 568 F.3d at 575).

When BMI performed on its contract—especially when it inspected the alloy chute for any loose slag—it "assumed to act." *See id.* It thereby took on "a duty . . . to perform the act in a nonnegligent manner." *See Fultz*, 683 N.W.2d at 591. Viewing the facts in the light most favorable to the plaintiffs, Michigan law would recognize that BMI owed Leone a duty "separate and distinct" from its contractual obligations to A.K. Steel.

BMI notes other potential problems with the plaintiffs' case, such as Leone's concession that he has no reason to believe that the slag that hit him was loose when BMI completed its work. *See* Part I.A, *supra*. But those issues pertain to whether BMI *breached* its duty to Leone or whether any such breach was a *proximate cause* of Leone's injury, not whether a duty existed in the first place. And because BMI proffers no alternative arguments on those grounds, we are confined to the duty question.

## III.    CONCLUSION

Therefore, we REVERSE the district court's grant of summary judgment and REMAND for further proceedings consistent with this opinion.