*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN LAWRENCE HARPER,

        Plaintiff-Appellant,

v

ASHGROVE APARTMENTS, ASHGROVE
APARTMENTS OF STERLING
HEIGHTS II, LTD., and ELON PROPERTY
MANAGEMENT, LLC,

        Defendants/Third-Party Plaintiffs-
        Appellees,

and

BBEK CONSTRUCTION, LLC,

        Defendant/Third-Party Defendant-
        Appellee.

UNPUBLISHED
September 24, 2019

No. 345299
Macomb Circuit Court
LC No. 2017-000230-NO

Before: BECKERING, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition to defendant/third-party defendant, BBEK Construction, LLC (BBEK). We affirm in part, reverse in part, and remand.

On appeal, plaintiff argues that the trial court erred when it granted BBEK's motion for summary disposition because BBEK owed him a general duty of care, which included duties to coordinate the walkway's construction with defendants/third-party plaintiffs, Ashgrove Apartments (Ashgrove), Ashgrove Apartments of Sterling Heights II Ltd (Ashgrove SH), and Elon Property Management, LLC (Elon) (collectively, Ashgrove defendants), notify Ashgrove defendants that the construction created a dangerous condition for plaintiff, build a ramp or

-1-

alternate route for plaintiff, avoid blocking plaintiff's apartment door, cover the walkway, and adequately light the walkway. Plaintiff also challenges the trial court's order granting summary disposition to Ashgrove defendants.

## I. FACTUAL BACKGROUND

This premises liability action arises out of a slip-and-fall accident that occurred on December 14, 2016. Plaintiff was living in an apartment located at 14801 Ashgrove Drive in Sterling Heights, Michigan that was owned by Ashgrove and Ashgrove SH. A long sidewalk runs throughout the apartment complex, which connects to a smaller walkway that leads directly to plaintiff's apartment. The walkway only leads to plaintiff's apartment, consists of two large concrete slabs and connects to a small concrete patio. The small concrete patio is directly in front of plaintiff's apartment door, which is the only way to access plaintiff's apartment. Each apartment in the apartment complex has its own individual door.

On December 14, 2016, there was snow on the ground and freezing temperatures. Plaintiff arrived home from work around 7:30 a.m. Around 9:00 a.m., plaintiff saw two construction workers removing the concrete slabs from the walkway. Ashgrove defendants retained the services of BBEK to remove and replace certain walkways in the apartment complex.

Around 4:00 p.m. that day, plaintiff's girlfriend, Samantha Ivery, visited plaintiff at his apartment. When plaintiff opened the door for Ivery, he noticed that the walkway's concrete slabs had been totally removed, leaving piles of uneven dirt. The construction workers were gone. Tree roots and dirt were exposed. Sometime later, plaintiff offered to escort Ivery to her car because she was leaving. Plaintiff attempted to traverse the walkway, but tripped and fell on tree roots and uneven dirt. Plaintiff injured his neck and back, tore his left rotator cuff, and reinjured a tear in his left meniscus.

Plaintiff filed a complaint against Ashgrove defendants for premises liability under MCL 554.139 and for common-law premises liability. Ashgrove defendants filed a third-party complaint against BBEK, alleging that BBEK was wholly or partially responsible for plaintiff's injuries. Plaintiff filed an amended complaint to add a claim for common-law negligence against BBEK. Ashgrove defendants and BBEK filed separate motions for summary disposition against plaintiff, which the trial court granted.

## II. PLAINTIFF'S CLAIM UNDER MCL 554.139 AGAINST ASHGROVE DEFENDANTS

Plaintiff first argues that the trial court erred when it found that the walkway constitutes a common area, and therefore, MCL 554.139(1)(b) did not apply. We disagree.

The trial court granted Ashgrove defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). This Court reviews a motion for summary disposition de novo. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). A motion for summary disposition under MCR 2.116(C)(10) should be granted if the evidence submitted by the parties fails to establish a genuine issue of a material fact, and the moving party is entitled to judgment or partial judgment as a matter of law. *Innovation Ventures v Liquid Mfg*, 499 Mich

491, 507; 885 NW2d 861 (2016). A genuine issue of material fact exists if, after viewing the record in a light most favorable to the nonmoving party, reasonable minds could differ on an issue. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court reviews only the evidence that was presented at the time the motion was decided, which, under MCR 2.116(C)(10), includes affidavits, pleadings, depositions, and other evidence that the parties submitted. *Innovation Ventures*, 499 Mich at 507. Additionally, the trial court reviews the evidence in a light most favorable to the party opposing the motion. *Gorman*, 302 Mich App at 115.

Plaintiff's premises liability claim against Ashgrove defendants was brought under MCL 554.139, which provides a specific protection to lessees of residential property in addition to any protection provided under common law. *Allison v AEW Capital Mgt*, 481 Mich 419, 426; 751 NW2d 8 (2008). MCL 554.139 provides, in relevant part:

> (1) In every lease or license of residential premises, the lessor or licensor covenants:
>
> (a) That the premises and all common areas are fit for the use intended by the parties.
>
> (b) To keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located, except when the disrepair or violation of the applicable health or safety laws has been caused by the tenants wilful or irresponsible conduct or lack of conduct.

"Common areas" are a distinct category from "premises" for the purposes of MCL 554.139. *Benton v Dart Props, Inc*, 270 Mich App 437, 443; 715 NW2d 335 (2006). A lessor's duty under MCL 554.139(1)(a) to maintain fitness for the use intended applies to " 'the premises and all common areas,' " while the duty under MCL 554.139(1)(b) regarding reasonable repair applies only to " 'the premises.' " *Allison*, 481 Mich at 427, quoting MCL 554.139(1)(a) and (1)(b). A common area within the context of a residential lease "describes those areas of the property over which the lessor retains control that are shared by two or more, or all, of the tenants." *Allison*, 481 Mich at 427. Examples of common areas include "parking lots within a leased residential property that are shared by two or more, or all of the tenants," *id*. at 428, and lobbies, hallways, stairways, and elevators, *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988). A premises for the purposes of MCL 554.139, "does not encompass 'common areas,' " and therefore, the duty "to repair under MCL 554.139(1)(b) does not apply to 'common areas.' " *Allison*, 481 Mich at 432.

Plaintiff's argument hinges on whether the walkway is distinguishable from a sidewalk. While there is evidence that a certain walkway can be distinct from a sidewalk, the walkway in this case constitutes a common area. In *Benton*, this Court determined that interior sidewalks within an apartment complex that led from apartment buildings to adjoining parking lots constitute common areas for the following reasons: (1) the sidewalks were located within the parameters of the apartment complex, (2) the landlord or those in the landlord's employ constructed the sidewalks and maintained control over them, and (3) tenants who owned and

parked their vehicles in the parking lot relied on the sidewalks for access to and from their apartment buildings. *Benton*, 270 Mich App at 443.

The walkway at issue in this case provides access only from plaintiff's apartment to the main sidewalk, and thus, is not regularly used or shared by other tenants, which suggests that the walkway is not a common area. The only reason one would use the walkway is for accessing plaintiff's apartment. However, there is no evidence that other tenants were prohibited from using the walkway. See *Allison*, 481 Mich at 427 (noting that a tenant without exclusive possession over an area suggests that it is a common area). Any tenant who wished to access plaintiff's apartment could only do so by utilizing the walkway, which was located inside the apartment complex. Ashgrove defendants constructed the walkway and maintained control over it—Ashgrove defendants' repair on the walkway is evidence of their continuous control over the walkway. Therefore, the trial court properly concluded that the walkway constitutes a common area for the purposes of plaintiff's statutory premises liability claim, and thus, MCL 554.139(1)(b) does not apply.

Because the walkway constitutes a common area under MCL 554.139(1)(a), Ashgrove defendants had a contractual duty to keep the walkway fit for its intended use. *Allison*, 481 Mich at 429. Plaintiff argues that Ashgrove defendants failed to ensure that the walkway was fit for its intended use because the concrete slabs were removed. We agree that there is a question of fact regarding the fitness of the walkway such that summary disposition was inappropriate.

"While the *Allison* Court specifically referenced parking lots, the principles set forth apply to all common areas . . . ." *Hadden v McDermitt Apartments, LLC*, 287 Mich App 124, 130; 782 NW2d 800 (2010) (applying the principles articulated in *Allison* to determine whether there was a question of fact as to whether a "stairway was fit for its intended use of providing tenants with reasonable access under the circumstances presented at the time of [the] plaintiff's fall."). The relevant question is "whether there could be reasonable differences of opinion regarding whether the . . . [walkway] was fit for its intended use of providing tenants with reasonable access under the circumstances presented at the time of plaintiff's fall." *Id*.

Similar to the intended use of a sidewalk, a walkway's intended use is to walk on it. *Benton*, 270 Mich App at 444. Specifically, the purpose of the walkway at issue was to provide tenants, specifically plaintiff, reasonable access from the main sidewalk to plaintiff's apartment. Thus, the only remaining question is whether the removal of the concrete slabs on the walkway made it unfit for its intended use of providing plaintiff reasonable access from the main sidewalk to plaintiff's apartment under the circumstances present when plaintiff fell. *Id*. The word "fit" as used in MCL 554.139(1)(a) is defined as "adapted or suited; appropriate." *Allison*, 481 Mich at 429. MCL 554.139(1)(a) does not require the common area to be perfectly maintained, in an ideal condition, or "in the most accessible condition possible . . . ." *Hadden*, 287 Mich App at 130. The "mere inconvenience of access," *Allison*, 481 Mich at 430, i.e., the presence of ice on a sidewalk, does not render an area unfit, but "a sidewalk covered in ice is not fit," for its intended purpose of walking, *Benton*, 270 Mich App at 444.

To establish that a common area was unfit for its intended use, the "plaintiff must present more evidence than simply the presence of . . . [an obstacle] and someone falling." *Estate of Daniel George Trueblood v P&G Apartments, LLC*, __ Mich App __, __; __ NW2d __ (Docket

No. 340642, issued March 12, 2019), slip op at 7. Plaintiff presented evidence that the concrete slabs from the walkway were removed, which exposed an uneven tract of dirt. On the basis of the images taken after plaintiff's accident, the removal of the concrete slabs left piles of uneven dirt and rocks, and was left exposed to the wintry weather. The walkway was also surrounded by snow. Plaintiff's apartment has one door for entry and exit, and is generally accessible only by walking over the walkway to the main sidewalk. While a dirt pathway may have provided reasonable access to plaintiff's apartment, plaintiff presented evidence that the condition of the walkway at issue did not provide plaintiff reasonable access to his apartment.

Contrary to the trial court's conclusion, Ivery's ability to traverse the walkway is not dispositive of the walkway's fitness. Ivery testified that she struggled to traverse the walkway because it was uneven and icy. Ivery even described the walkway as a "hole." In any event, evidence that others were able to traverse the area where plaintiff fell does not overcome other evidence that the area was unfit. See *id*. at __; slip op at 8 (declaring that evidence that other individuals were able to walk, without falling, on the sidewalk where the plaintiff fell could indicate that the sidewalk was fit for its intended use, but could also indicate that the others were just walking more carefully). When plaintiff fell, it was dark outside, the temperatures were around freezing, and there was snow on the ground. Therefore, viewing the evidence in a light most favorable to plaintiff, a rational trier of fact could find that the walkway's condition was not fit for its intended use of providing plaintiff reasonable access to and from his apartment.

Because there is a question of fact as to whether the walkway was fit for its intended use, this Court must next ask whether there is a genuine issue of material fact as to whether Ashgrove defendants breached their duty to keep the common area fit for its intended use under MCL 554.139(1)(a). *Id*. (noting that, once there is a question of fact as to whether the property at issue was fit for its intended use, "the next question is whether [the] defendant breached its duty under MCL 554.139(1)(a)."), citing *Benton*, 270 Mich App at 444. Landlords have "a duty to take reasonable measures to ensure that" the property at issue is fit for its intended use. *Benton*, 270 Mich App at 444. Plaintiff testified that the construction on the walkway began around 9:00 a.m. A few hours later, plaintiff informed Elon that the construction workers removed the concrete slabs and left without cleaning up the area. An Elon employee removed the snow from the walkway, called the contractor to find out how long construction would last, but took no other action. Before the concrete slabs could be replaced, plaintiff fell on the walkway.

It is apparent that the walkway was under construction at the time of plaintiff's fall. It would be illogical to hold a landowner liable for injuries a tenant sustained while walking through an area that the landowner was in the process of maintaining for its intended use. However, there is a question of fact as to whether the removal of the concrete slabs without any cleanup or safety precautions constituted a breach of MCL 554.139(1)(a). Viewing the evidence in a light most favorable to plaintiff, there is a genuine issue of material fact as to whether Ashgrove defendants breached their duty to take "reasonable care" in light of the construction and weather conditions of the day. *Id*. at 445.

III. PLAINTIFF'S CLAIM AGAINST ASHGROVE DEFENDANTS FOR COMMON-LAW
PREMISES LIABILITY

Plaintiff next argues that the open and obvious doctrine does not apply to this case because a special aspect existed and the condition of the walkway was effectively unavoidable. We disagree.[1]

A plaintiff in a premises liability action has the burden to prove the following elements of negligence: "(1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton*, 270 Mich App at 440. The tenant has the status of an invitee because a tenant is on a landlord's premises for commercial purposes. *Id*. The duty that a landowner owes an invitee is "to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001) (citation omitted). This duty does not include removal of dangers that are open and obvious, meaning the dangers are ones that an average person with ordinary intelligence is reasonably expected to discover upon casual inspection. *Hoffner v Lanctoe*, 492 Mich 450, 460-461; 821 NW2d 88 (2012). Whether a danger is open and obvious is evaluated under an objective standard, and calls for an examination of "the objective nature of the condition of the premises at issue." *Lugo*, 464 Mich at 523-524.

"[A]s a limited exception to the circumscribed duty owed for open and obvious hazards, liability may arise when *special aspects* of a condition make even an open and obvious risk unreasonable" despite an invitee's knowledge of the condition. *Hoffner*, 492 Mich at 461. "Two instances that can constitute 'special aspects' include when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable* because these conditions give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided." *Lymon v Freedland*, 314 Mich App 746, 758-759; 887 NW2d 456 (2016) (citation and quotation marks omitted). When special aspects exist, the landowner has a duty to take reasonable precautions to protect the invitee from that risk. *Joyce v Rubin*, 249 Mich App 231, 240; 642 NW2d 360 (2002).

Plaintiff does not challenge the trial court's conclusion that the walkway's condition was open and obvious, but rather, argues that the doctrine is inapplicable because a special aspect existed. Plaintiff contends that the dangerous walkway constituted a special aspect because it presented a risk of harm that was effectively unavoidable. Plaintiff claims that he could only

---

[1] As a side matter, plaintiff incorrectly contends that the trial court applied the open and obvious doctrine when it analyzed plaintiff's claim under MCL 554.139. The open and obvious doctrine does not apply when the landowner has a statutory duty to maintain the premises in accordance with MCL 554.139. *Allison*, 481 Mich at 425. The trial court's opinion and order granting Ashgrove defendants' motion for summary disposition specifically stated that the open and obvious doctrine would not preclude Ashgrove defendants' liability under MCL 554.139.

leave his apartment by traversing the walkway because snow and ice prevented any alternate route.

In *Lugo*, our Supreme Court gave the following example of an open and obvious condition that is effectively unavoidable: "a commercial building with only one exit for the general public where the floor is covered with standing water." *Lugo*, 464 Mich at 518. The condition was one that was effectively unavoidable because any customer who wished to exit the building would be forced to leave through the water. *Id*. In *Joyce*, the plaintiff was removing her belongings from the home of one of the defendants during snowy weather when she slipped and fell on a sidewalk leading to the front door. *Joyce*, 249 Mich App at 233. The plaintiff argued, in part, that the sidewalk's open and obvious condition was effectively unavoidable because the property owner refused to provide an alternate route, safety measures, or a rug for traction. *Id*. at 241. This Court rejected the plaintiff's argument, reasoning that the plaintiff could have removed her belongings on another day, or insisted on using an alternate route to the house. *Id*. at 242. This Court relied on *Lugo* to determine that the plaintiff was not effectively trapped inside the building because the plaintiff admitted that she walked around the normal pathway to avoid the snowy sidewalk. *Id*., citing *Lugo*, 464 Mich at 518.

There is no genuine issue of material fact as to whether the walkway's condition was effectively unavoidable, and therefore, the open and obvious doctrine precludes Ashgrove defendants' liability. Although there was only one door to plaintiff's apartment, he admitted that he could have avoided the dangerous condition of the walkway by walking through snow and dirt. "Unavoidability is characterized by an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome." *Hoffner*, 492 Mich at 468 (citation omitted). To be effectively unavoidable, the plaintiff "must be *required or compelled* to confront a dangerous hazard." *Id*. at 468-469. Such was not the case here. Like the plaintiff in *Joyce*, plaintiff could have avoided the walkway by walking around it. Plaintiff has not offered any evidence to demonstrate that the condition of the snow and ice around the walkway was so severe to preclude an alternate route. Therefore, summary disposition was appropriate with respect to plaintiff's common-law premises liability claim.

## IV. PLAINTIFF'S NEGLIGENCE CLAIM AGAINST BBEK

Plaintiff's third argument concerns the trial court's order granting BBEK summary disposition. Plaintiff contends that BBEK owed him a common-law duty of care, which required BBEK to coordinate the walkway's construction with Ashgrove defendants, notify Ashgrove defendants that the construction created a dangerous condition for plaintiff, build a ramp or alternate route for plaintiff, avoid blocking plaintiff's apartment door, cover the walkway, and adequately light the walkway. Plaintiff argues that the duties listed in his amended complaint were not specific duties of care, but rather, were necessary *actions* BBEK should have undertaken to comply with a general common-law duty of care and to not unreasonably endanger others. According to plaintiff, BBEK's failure to take these actions created a new hazard or otherwise created an unreasonable risk of harm, thereby breaching a common-law duty of care.

The trial court relied on MCR 2.116(C)(8) and (C)(10) to grant BBEK's motion for summary disposition. This Court must treat BBEK's motion as having been decided only under MCR 2.116(C)(10) to the extent that the trial court considered evidence beyond the pleadings to

determine that there was no genuine issue of material fact. See *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 544; 904 NW2d 192 (2017).

To establish a prima facie case of negligence, the plaintiff must first prove that the defendant owed the plaintiff a duty of care. *Henry v Dow Chem Co*, 473 Mich 63, 71; 701 NW2d 684 (2005). In a common-law negligence case, a "duty" is a legally recognized obligation to conform to a certain standard of conduct toward others. *Rakowski v Sarb*, 269 Mich App 619, 629; 713 NW2d 787 (2006). Every person "has a duty to use due care or to not unreasonably endanger the person or property of others." *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660; 822 NW2d 190 (2012). Whether a duty exists is a question of law for the court, *Beaudrie v Henderson*, 465 Mich 124, 130; 631 NW2d 308 (2001), and depends on whether the defendant has "*any* legal obligation to act for the benefit of the plaintiff," *Rakowski*, 269 Mich App at 629 (citation and quotation marks omitted). This Court considers the following factors to determine whether a legal duty exists: "the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Hill*, 492 Mich at 661 (citation and quotation marks omitted). The parties' relationship is often the most important factor, but no duty can be imposed unless the harm was foreseeable. *Id*. The duty of care that exists when an individual actively engages in certain conduct "may arise from a statute, a contractual relationship, or by operation of the common law," as plaintiff alleges in this case. *Cummins v Robinson Twp*, 283 Mich App 677, 692; 770 NW2d 421 (2009).

In *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967),[2] the Michigan Supreme Court recognized a common-law duty that "imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." In *Loweke v Ann Arbor Ceiling & Partition Co*, LLC, 489 Mich 157, 169-170; 809 NW2d 553 (2011), our Supreme Court again recognized this duty, explaining:

> Determining whether a duty arises separately and distinctly from the contractual agreement . . . generally does not necessarily involve reading the contract, noting the obligations required by it, and determining whether the plaintiff's injury was contemplated by the contract. *[Davis v Venture One Constr, Inc*, 568 F3d 570, 576 (CA 6, 2009).]* Instead, *Fultz*'s directive is to determine whether a defendant owes a noncontracting, third-party plaintiff a legal duty apart from the defendant's contractual obligations to another. *Fultz [v Union-Commerce Assoc]*, 470 Mich at 461-462, 683 NW2d 587 [2004]. As this Court has historically recognized, a separate and distinct duty to support a cause of

---

[2] *Clark* was impliedly overruled on other grounds by *Fultz v Union-Commerce Assoc*, 470 Mich 460; 683 NW2d 587 (2004), as stated in *Lakeland Regional Health Sys v Walgreens Health Initiatives, Inc*, 604 F Supp 2d 983, 999 (WD Mich, 2009) (noting that *Fultz* overruled *Clark* to the extent that *Clark* held that a contracting party "necessarily and automatically has a tort cause of action to redress another party's failure to perform tasks under the contract with ordinary care").

action in tort can arise by statute . . . or by a number of preexisting tort principles, including duties imposed because of a special relationship between the parties . . . *and the generally recognized common-law duty to use due care in undertakings* . . . . [Emphasis added.]

It is undisputed that on December 14, 2016, BBEK, through its subcontractors, removed plaintiff John Harper's concrete walkway that constituted the only access to and from his apartment. The removal process started around 9:00 a.m. and ended by at least 4:00 p.m. It is also undisputed that BBEK left its worksite that day without either replacing the walkway or placing a protective cover over the resulting uneven dirt piles, rocks, and tree roots left behind in the wake of that removal. Plaintiff argues that BBEK owed him a common-law duty of due care because it undertook to remove the only walkway to his apartment. He further contends that BBEK breached its duty of due care by leaving the construction site unfinished and uncovered, among other things[3], thereby creating an unsafe passage that proximately caused him injuries. We conclude that BBEK owed plaintiff a common-law duty of due care in its undertaking. See *Loweke*, 489 Mich at 170.[4]

Plaintiff is basing his negligence claim on an alleged hazard that BBEK actively created, not the failure to protect him from harm created by someone or something else. Because BBEK

---

[3] We do agree with the trial court that plaintiff has suggested some rather extreme measures that would have enabled BBEK to comply with its duty of due care after removing plaintiff's sidewalk. But at a minimum, plaintiff has established that a duty of due care was owed due to BBEK's conduct and a resulting potential breach for the jury's consideration.

[4] The common-law duty of due care in undertakings, recognized and referenced in *Loweke,* has also been recognized in several unpublished cases decided by this Court. In one case, a plaintiff was riding her bicycle along the sidewalk when it abruptly ended, "causing her to flip headfirst over the handlebars and suffer injuries." *Salveta v Florence Cement Co, Inc,* unpublished per curiam opinion of the Court of Appeals, issued May 24, 2012 (Docket No. 303067), p 1. In a second case, the plaintiff was riding his bicycle on a sidewalk when he rode into an area where the sidewalk had been removed, and suffered injuries when he "flipped over and landed on his face in the excavated area." *Price v Royal Oak,* unpublished per curiam opinion of the Court of Appeals, issued June 9, 2011 (Docket No. 296483), p 2. In a third case, "[the] plaintiff's decedent died from injuries he sustained when he collided with a guy wire stretching from a utility pole across a recently constructed city sidewalk in the city of Royal Oak." *Lameau v Royal Oak,* unpublished per curiam opinion of the Court of Appeals, issued August 21, 2012 (Docket No. 289947), p 1. In each of these cases, the defendants were companies that had contracted with the city to repair sidewalks, and this Court found that defendants had a common-law duty to exercise reasonable care in the performance of their work. *Salveta*, unpub op at 2; *Price v Royal Oak (After Remand),* unpublished per curiam opinion of the Court of Appeals, issued June 14, 2012 (Docket No. 296483), p 4; *Lameau*, unpub op at 5. While these cases are not precedential, their reasoning may be instructive or persuasive, even more so since they are consistent with our Supreme Court's decisions in *Clark* and *Loweke. Cox v Hartman*, 322 Mich App 292, 308; 911 NW2d 219 (2017).

removed plaintiff's walkway, plaintiff is correct that BBEK had a common-law duty to use due care in its undertaking associated with the construction project at issue, which encompassed a duty to avoid creating a new hazardous condition to third parties. *Id*. at 468-469. Plaintiff has also established material questions of fact as to whether BBEK breached its duty and whether such breach, if one occurred, proximately caused plaintiff's damages.

We affirm the trial court's order granting Ashgrove defendants' motion for summary disposition with respect to plaintiff's common-law premises liability claim. We reverse the trial court's order granting Ashgrove defendants' motion for summary disposition with respect to plaintiff's claim pursuant to MCL 554.139(1)(a) and the trial court's order granting BBEK's motion for summary disposition. We remand for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, no party having prevailed in full.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Thomas C. Cameron