Mary Beth Kelly, J.
These cases arise out of an explosion that destroyed plaintiff Marcy Hill’s Clinton Township home after she released natural gas through an uncapped gas line, which ignited when her adult daughter attempted to light a candle, after they had both actually smelled the gas in the home throughout the day and evening. Plaintiffs[1] filed suit against the retailers, delivery companies, and installers of plaintiffs’ electric dryer, which had been installed nearly four years earlier and had functioned without incident. We heard oral argument on the applications to consider in part “(1) whether the defendant installers of the electrical appliance, Mark Pritchard and Timothy Dameron, had a duty to the plaintiffs with respect to the uncapped gas line in their home that was *655 separate and distinct from their contractual duty to properly and safely install the electrical appliance” and “(2) whether these defendant installers created a new dangerous condition with respect to the uncapped gas line, or made an existing dangerous condition more hazardous . . . .”[2]
Because defendant installers and plaintiffs had a limited relationship that did not require defendant installers to undertake any action relative to the uncapped gas line, we hold that defendant installers owed no legal duty to plaintiffs with respect to the uncapped gas line in plaintiffs’ home. Further, we conclude that the delivery and installation of the dryer did not create a new dangerous condition with respect to the uncapped gas line or make an existing dangerous condition more hazardous. We therefore reverse the judgment of the Court of Appeals and remand this case to the circuit court for entry of an order granting summary disposition for defendants.[3]
I. FACTS AND PROCEDURAL HISTORY
In August 2003, Marcy purchased a home from Charles and Oralia Lindsey. The home had a kitchen niche for the clothes washer and dryer. The Lindseys had used a natural-gas-powered dryer, which connected to a gas line that extended from the furnace room to the *656 kitchen niche.[4] When the Lindseys moved out of the home, they took their appliances with them and turned off the gas to the line supplying the dryer. They did not put a pipe cap on the end of the gas line in the kitchen, the end of which was visibly apparent.
A few weeks later, Marcy purchased a new washer and an electric-powered dryer from defendant retailers.[5] The appliances were delivered by defendant delivery companies[6] and installed by Pritchard and Dameron on September 8, 2003.[7] At the direction of Marcy’s mother, defendant installers positioned the appliances in the designated area of the kitchen, in the same spot where the Lindseys’ washer and dryer had been. After its installation, the electric dryer functioned without incident for almost four years.
On May 19, 2007, Marcy’s kitchen faucet and the pipes under her sink required repair. The next day, after seeking repair advice, Marcy attempted to turn off the main water supply by turning various valves in the furnace room. In doing so, Marcy inadvertently opened the natural gas valve supplying the uncapped gas line in the kitchen. After smelling natural gas, Marcy attempted to shut off the valve by returning it to what she thought to be its original position, but she did not close the valve. Marcy continued to smell gas periodically throughout the day. Although she knew she “was supposed to call someone” under the circumstances, she did *657 not do so.[8] Instead, Marcy opened the windows and “thought there was nothing wrong,” continuing to light and smoke cigarettes throughout the evening.
Later, when Marcy’s daughter, Patricia, arrived, she told Marcy that she smelled gas. Like Marcy, Patricia knew the smell of gas “was dangerous” and that she should “get out of the house.”[9] While Marcy and her daughter continued to periodically smell gas, they both continued to light and smoke cigarettes indoors and did nothing to remedy the situation except to open the windows.[10] That evening, both Marcy and her son went to bed, while Patricia went out. When Patricia returned home at about 3 a.m., she again smelled gas near the dryer.[11] Patricia then went to the living room, where she attempted to light a candle with a lighter. According to Patricia, “as soon as the lighter ignited,” the house exploded. Plaintiffs escaped from the burning house, but all of them suffered some injuries.
Plaintiffs filed a lawsuit against the instant defendants, alleging that defendant installers negligently installed the new electric dryer and failed to properly inspect the uncapped gas line, discover the uncapped gas line, cap the gas line, and warn or give notice to plaintiffs of the uncapped gas line. Defendant installers *658 moved for summary disposition under MCR 2.116(C)(8) and (10), while defendant retailers and delivery companies moved for summary disposition under MCR 2.116(C)(10). Defendant installers asserted that they did not owe plaintiffs a cognizable duty because they did not create a “new hazard” that did not previously exist and they had “absolutely no interaction” with the gas line. Defendant retailers and delivery companies argued that they had no duty to protect plaintiffs from the gas line, noting that they had merely sold Marcy the dryer or arranged for delivery services.
The circuit court first denied defendant retailers’ and delivery companies’ motions for summary disposition, reasoning in part that, “at a minimum, [these] defendant entities owed a duty to plaintiffs not to make the situation involving the uncapped gas line worse.” The circuit court also denied defendant installers’ motion for summary disposition, explaining:
[T]here is a social policy which applies to delivery personnel such that they are precluded from entering an individual’s home and making a dangerous situation even worse. Plaintiffs have presented sufficient evidence that the uncapped gas valve, coupled with its concealment by the location of a new appliance, created a foreseeable risk of harm. There is no evidence that [defendant installers] attempted to cap the open gas valve or warn plaintiffs about the hazard. It cannot seriously be disputed that the nature of the harm posed a very serious risk. The Court therefore concludes that [defendant installers] owed a duty to plaintiffs not to make the hazard created by the uncapped gas valve worse by their actions, including, but not limited to, positioning the new appliances in such a way as to conceal the hazard from view.[12]
*659 Defendant installers sought interlocutory leave to appeal in the Court of Appeals, which granted leave and affirmed the circuit court in an unpublished opinion per curiam.[13] Addressing the issue of duty, the Court of Appeals held that defendant installers had a duty not to make the uncapped gas line more dangerous by “concealing” it with the electric dryer. The panel explained, “[T]he hazard that allegedly caused the explosion did not exist until [defendant installers] installed the dryer in a way that prevented the discoveiy of the uncapped gas line.”[14]
Defendants filed separate applications for leave to appeal in this Court. We heard oral argument on the applications. In lieu of granting leave to appeal, pursuant to MCR 7.302(H)(1), we reverse the judgment of the Court of Appeals.
II. STANDARD of review
We review de novo a circuit court’s determination on a motion for summary disposition under MCR 2.116(C)(10).[15] Whether a defendant owes a plaintiff a duty of care is a question of law decided by the circuit court.[16] We review de novo the determination whether a duty exists.[17]
*660 hi. ANALYSIS
To establish a prima facie case of negligence, a plaintiff must prove that “(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant’s breach was a proximate cause of the plaintiffs damages.”[18] This negligence action, however, principally concerns the element of duty and requires us to consider the threshold question whether defendants owed plaintiffs any of the claimed legal duties when the dryer was sold, delivered, and installed in plaintiffs’ home nearly four years before the explosion.[19] Defendants argue that the lower courts erred by concluding that they owed plaintiffs a duly to not create a new hazard by “concealing” an open view of the gas line. Plaintiffs counter that defendant installers owed a duty to either cap the gas hne or warn plaintiffs of the existence of the uncapped hne.
A. LEGAL DUTY
“ Tt is axiomatic that there can be no tort liability unless [a] defendant[] owed a duty to [a] plaintiff.’ ”[20] Every person engaged in the performance of an undertaking has a duty to use due care or to not unreasonably endanger the person or property of others.[21] However, as a general rule, “ ‘there is no duty that obhgates one person to aid or protect another.’ ”[22] Generally, the duty that *661 arises when a person actively engages in certain conduct may arise from a statute, a contractual relationship, or by operation of the common law, as plaintiffs allege in this case.[23]
At common law, “[t]he determination of whether a legal duty exists is a question of whether the relationship between the actor and the plaintiff gives rise to any legal obligation on the actor’s part to act for the benefit of the subsequently injured person.”[24] “[T]he ultimate inquiry in determining whether a legal duty should be imposed is whether the social benefits of imposing a duty outweigh the social costs of imposing a duty.”[25] Factors relevant to the determination whether a legal duty exists include the “the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented.”[26] We have recognized, however, that “[t]he most important factor to be considered [in this analysis] is the relationship of the parties” and also that there can be no duty imposed when the harm is not foreseeable.[27] In other words, “[b]efore a duty can be imposed, there must be a relationship between the parties and the harm must have been foreseeable.”[28] If either of these two factors is lacking, then it is unnecessary to consider any of the remaining factors.[29]
*662 Plaintiffs argue that defendant installers had a common-law duty to cap the gas line or warn plaintiffs of its existence.[30] As noted, in determining whether a legal duty should be imposed in this case, we first consider the parties’ relationship. In Dyer v Trachtman,[31] a medical malpractice case, we focused on the relationship between the parties to determine whether the defendant doctor, who performed an independent medical examination (IME) of the plaintiff, owed a duty to the plaintiff.[32] We recognized in Dyer that because the parties only had a limited relationship, unlike that between a patient and treating physician, the defendant only owed a limited duty to the plaintiff commensurate with his performance of the IME.[33] Because only a limited relationship existed, only a limited duty could be imposed, and consequently, it was unnecessary to consider the other factors relevant to determining whether a duty existed.[34]
As in Dyer the parties in this case had a limited relationship, which was simply that of a customer and an installer of electrical appliances. And although a contractual relationship existed to meet this end, plaintiffs concede that defendant installers satisfied their contractual obligations by delivering and installing the washer and electric dryer. Instead, plaintiffs assert that *663 defendant installers had a common-law duty to take certain actions with respect to the uncapped gas line.[35] The limited duty defendant installers undertook, however, was only to properly deliver and install the washer and electric dryer in plaintiffs’ home. Certainly every person engaged in the performance of an undertaking has “ ‘an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others.’ ”[36] Here, the limited undertaking in which the defendant installers were engaged was the delivery and installation of a washer and an electric dryer. The contract did not obligate them to inspect, cap, or in any manner touch the gas line. Having engaged to perform this undertaking, defendant installers had a common-law duty to do so with due care, and the record reflects that they did so.
Defendant installers entered plaintiffs’ home for this limited purpose only once, for a total of 12 minutes. Further, the task was accomplished in a nonnegligent manner at the direction of Marcy’s mother, as demonstrated by the fact that the electric dryer functioned without incident up until the time of the explosion. No record evidence suggests that defendant installers asserted any duty relative to the gas line, let alone any duty to inspect or warn plaintiffs about the gas line. Given the limited nature of the relationship between defendant installers and plaintiffs, defendant installers were under no obliga *664 tion to warn of or cap the gas line or undertake any action relative to the gas line, but only had an obligation to use due care when installing the appliances.[37] Because the limited relationship of the parties did not require defendant installers to undertake any action with regard to the gas line, plaintiffs’ negligence claim fails as a matter of law.
*665 Plaintiffs, however, argue that defendant installers had a duty to take action with regard to the gas line. Plaintiffs’ argument is flawed because it wrongly assumes that defendant installers, having undertaken to deliver and install the washer and electric dryer, assumed other responsibilities not associated with the delivery and installation of the washer and dryer.[38] Defendant installers did not act on the gas line. They only delivered and installed the dryer. Thus, having not undertaken by contract or otherwise to act on the gas line, they had no duty to plaintiffs with respect to it.[39]
*666 Plaintiffs also suggest that we should conclude that defendant installers owed plaintiffs a duty because of plaintiffs’ ignorance of and mistaken assumptions regarding the gas line.[40] We decline to impose a duty on the basis of ignorance or mistaken assumption under these facts because the indicia necessary for imposing a duty based on a special relationship are plainly absent. We have recognized that certain types of special relationships, such as common carriers and their passengers, innkeepers and their guests, and doctors and patients, justify the imposition of a duty because a person entrusts himself or herself to the control of another person. We have explained the rationale behind imposing a duty in such situations:
Social policy. .. has led the courts to recognize an exception to th[e] general rule [that there is no duty that obligates one person to aid or protect another] where a special relationship exists between a plaintiff and a defendant. ... The rationale behind imposing a duty to protect in these special relationships is based on control. In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself. The duty to protect is imposed upon the person in control because he is best able to provide a place of safety.[41]
Defendant installers’ actions here related solely to the delivery and installation of the washer and electric dryer, which occurred in plaintiffs’ home, which is *667 quintessentially the place where plaintiffs are most in control and “best able to provide a place of safety” for themselves.[42] It is not the result of defendant installers’ actions, that plaintiffs ceded control of their home, thereby “entrusting] [themselves] to the control and protection of another . .. .”[43] Plaintiffs never lost control of the gas line. Plaintiffs easily could have at any time capped the line or removed it or, once they smelled gas, called the gas company to ensure their own safety, as well as that of the premises. Instead, plaintiffs simply chose not to undertake these obvious safety precautions, despite Marcy’s concession that she knew to call the gas company if she detected the odor of natural gas. Given that the limited relationship between an appliance installer and homeowners or occupiers is such that the homeowners or occupiers neither entrust the appliance installer with their control and protection nor lose the ability to protect themselves, we decline to modify the common law and impose a duty on such an installer to act for the benefit of the homeowners or occupiers in regard to hazards created by third parties. Indeed, we are not aware of a single Michigan case that imposes a legally cognizable duty when a competent adult chooses to remain ignorant about a condition within his or her complete control; likewise, we are not aware of any caselaw holding that a party’s silent, unspoken assumptions impose an affirmative legal duty on another party to act in accordance with those unshared assumptions.
Moreover, regarding the duty to warn, we note that the circumstances of the relationship between defendant installers and plaintiffs did not give rise to any legal obligation on defendant installers’ part because plaintiffs knew about the uncapped gas line before *668 installation of the dryer. It is uncontested that the uncapped gas line was fully visible for several weeks between the time Marcy bought the home in August 2003 and September 8, 2003, when the dryer was installed. At her deposition, Marcy acknowledged that she had lived in the house for “a few weeks” before the washer and dryer were installed, that the open kitchen niche was “highly visible” during this time, and that she saw the pipe in the kitchen niche but “thought [the pipes] were water lines.” These undisputed facts establish that plaintiffs had constructive notice of the gas line’s existence. This Court considered constructive notice in Converse v Blumrich, stating:
A person is chargeable with constructive notice where, having the means of knowledge, he does not use them. ... If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making such obvious inquiries, he must be taken to have notice of those facts, which, if he had used such ordinary diligence, he would readily have ascertained.[44]
Plainly, Marcy’s admission that she was aware of the pipes in the kitchen niche should have led her, using “ordinary caution,” to make further inquiries regarding the nature of the pipes. Instead of making further inquiries or using ordinary diligence, Marcy merely “kind of assumed Sears did all that.” Therefore, plaintiffs are considered to have notice of the “highly visible” *669 gas line because “ [knowledge of facts putting a person of ordinary prudence on inquiry is equivalent to actual knowledge of the facts which a reasonably diligent inquiry would have disclosed.”[45] Because “there is no duty to warn someone of a risk of which that person is aware,”[46] plaintiffs’ theory that defendant installers had a duty to warn them of the gas line necessarily fails as a matter of law.[47]
In summary, because only a limited relationship existed between the parties, through which defendant installers undertook only to nonnegligently install electric appliances, it is not necessary for us to consider the additional factors related to whether a duty exits.[48] Plaintiffs nonetheless urge us to alter the common law and consider policy reasons that support the imposition of a duty. However, it is precisely because the social benefits of imposing a duty do not outweigh the social *670 costs that we will not do so.[49] If liability were imposed on defendants for failure to cap the gas line or to warn plaintiffs of the uncapped gas line, then similarly situated defendants would presumably also owe a duty to a plaintiff to inspect and prevent all other hazards that the defendant might encounter in a customer’s home. The burden imposed on defendants would be onerous and unworkable because they would be required to protect their customers from potential hazards they might encounter in the customer’s home when, in fact, it is the homeowners who are best equipped to be aware of their home’s potential hazards and protect themselves accordingly.[50] Indeed, it is difficult to envision what social benefit would result were we to recognize plaintiffs’ claim because the result would be to absolve homeowners from any duty to protect themselves from hazards within their own homes. As we have previously explained:
[W]e have on occasion allowed for the development of the common law as circumstances and considerations of public policy have required. See, e.g., Berger [v Weber, 411 Mich 1; 303 NW2d 424 (1981)]. But as Justice YOUNG has recently observed, our common-law jurisprudence has been guided by a number of prudential principles. See Young, A judicial traditionalist confronts the common law, 8 Texas Rev L & Pol 299, 305-310 (2004). Among them has been our attempt to “avoid capricious departures from bedrock legal rules as such tectonic shifts might produce unforeseen and *671 undesirable consequences,” id. at 307, a principle that is quite applicable to the present case.[51]
Accordingly, we continue to adhere to our common-law concept of duty that is circumscribed by the bounds of the parties’ relationship.
B. NEW HAZARD
To avoid preclusion of their negligence claim, plaintiffs allege that defendant installers created a new hazard by placing the electric dryer in front of the gas line. As this Court stated in Fultz, one breaches a duty that is “separate and distinct” from the contract when it creates a “new hazard.”[52] Thus, the remaining issue is whether defendant installers created a new hazard when they installed the washer and dryer in front of the gas line.
The delivery and installation in this instance did not create a new dangerous condition with respect to the uncapped gas line or make an existing dangerous condition more hazardous. The hazard — the uncapped gas line — was present when defendant installers entered the premises, and it was present when they left. The placement of the dryer did not affect the existence or nature of the hazard in any manner because the danger posed by the uncapped gas line was exactly the same before and after the electric dryer was installed.[53] The delivery and installation in this instance did not create a new dangerous condition with respect to the uncapped *672 gas line, or make an existing dangerous condition more hazardous. Therefore, the Court of Appeals erred by concluding that defendant installers breached a duty not to create a new hazard.
IV CONCLUSION
Defendant installers and plaintiffs had a limited relationship that required the former to properly install electrical appliances in plaintiffs’ home. Because that limited relationship did not require defendant installers to undertake any action with respect to the uncapped gas line, they owed plaintiffs no duty with respect to the gas line as a matter of law. Further, the delivery and installation of the dryer did not create a new dangerous condition with respect to the uncapped gas line or make an existing dangerous condition more hazardous. Thus, the lower courts erred by denying defendants’ motions for summary disposition on the basis that defendants owed plaintiffs a duty. We therefore reverse the judgment of the Court of Appeals and remand this case to the circuit court for entry of an order granting summary disposition in favor of defendants.
YOUNG, C.J., and MARKMAN and ZAHRA, JJ., concurred with Mary Beth Kelly, J.

 “Plaintiffs” refers to Marcy Hill and her children, Patricia and Christopher Hill.

 Hill v Sears Roebuck & Co, 490 Mich 896 (2011). Any liability of the retailers and delivery companies would result from their agency relationship with the installers.

 As used in this opinion “defendants” refers to the retailers, the delivery companies, and the installers. Plaintiffs’ claims against defendant retailers and delivery companies are based on the theory that defendant installers were the agents of both the retailers and the delivery companies. Plaintiffs also sued the former owner of the home who installed the gas line and two other previous owners, but none of these individuals are involved in this appeal.

 A prior owner, Albert Kimpe, had installed the gas line.

 Sears, Roebuck and Co. and Sears Logistic Services, Inc., which contracted for the delivery.

 Exel Direct, Inc., and Merchant Delivery, Inc.

 Defendant Sears Logistic Services, Inc., contracted with defendant delivery companies to perform delivery services, who in turn subcontracted the delivery and installation services to defendant installers. Plaintiffs are not a party to any of these contracts.

 Marcy admitted at her deposition that she had received gas bills that included instructions to immediately call the gas company if the smell of gas was detected.

 At her deposition, Patricia indicated she had “graduatefd] from the D.A.R.E. program [in which] we all learned in fifth grade [that] if you smell gas [you’re to get out of the house immediately].”

 Apparently, the smell of natural gas was sufficiently strong that plaintiffs’ neighbors told investigators and news reporters that they had smelled the gas before the explosion.

 Patricia testified at her deposition that she did not smell gas upon returning home at 3 a.m., but an insurance investigation report indicates that Patricia told the investigator that she did.

 Citations omitted. After the circuit court denied defendant installers’ motion for summary disposition, defendant delivery companies brought a motion for clarification of the duty owed to plaintiffs. In a written opinion and order, the circuit court stated, “[T]he only duty that [defendant delivery *659 companies] owed to plaintiffs was to refrain from making the situation involving the uncapped gas valve any worse than it already may have been.”

 Hills v Sears Roebuck & Co, unpublished opinion per curiam of the Court of Appeals, issued May 24, 2011 (Docket No. 295071).

 Id. at 3 (emphasis added).

 Dressel v Ameribank, 468 Mich 557, 561; 664 NW2d 151 (2003). Because the circuit court considered evidence outside the pleadings when it denied defendant installers’ motion for summary disposition, we consider the circuit court’s determination to be based on MCR 2.116(C)(10), as opposed to (C)(8).

 Beaudrie v Henderson, 465 Mich 124, 130; 631 NW2d 308 (2001).

 Fultz v Union-Commerce Assoc, 470 Mich 460, 463; 683 NW2d 587 (2004).

 Loweke v Ann Arbor Ceiling & Partition Co, LLC, 489 Mich 157, 162; 809 NW2d 553 (2011).

 See Fultz, 470 Mich at 463 (noting that the threshold question in a negligence action is whether the defendant owed a duty to the plaintiff).

 Id., quoting Beaty v Hertzberg & Golden, PC, 456 Mich 247, 262; 571 NW2d 716 (1997).

 Loweke, 489 Mich at 165, citing Clark v Dalman, 379 Mich 251, 261; 150 NW2d 755 (1967).

 Loweke, 489 Mich at 164, quoting Williams v Cunningham Drug Stores, 429 Mich 495, 499; 418 NW2d 381 (1988).

 Riddle v McLouth Steel Prod Corp, 440 Mich 85, 95; 485 NW2d 676 (1992).

 In re Certified Question from the Fourteenth Dist Court of Appeals of Texas, 479 Mich 498, 505-506; 740 NW2d 206 (2007) (quotation marks and citations omitted; emphasis added); see also Brown v Brown, 478 Mich 545, 552; 739 NW2d 313 (2007).

 In re Certified Question, 479 Mich at 505 (citations omitted).

 Id. (quotation marks and citations omitted).

 Id. at 505, 508.

 Id. at 509.

 Id. at 508-509.

 Because plaintiffs raise an agency theory of liability against defendant retailers and defendant delivery companies based on those defendants’ relationship with defendant installers, our analysis focuses solely on whether defendant installers owe plaintiffs any duty related to the gas line.

 Dyer v Trachtman, 470 Mich 45; 679 NW2d 311 (2004).

 Id. at 47-50.

 Id. at 49-50.

 Id.; see also In re Certified Question, 479 Mich at 507 (explaining that it is unnecessary to consider the additional factors when only a limited relationship exists).

 As we recently explained in Loweke, 489 Mich at 171:
[I]n determining whether the action arises in tort, and thus whether a separate and distinct duty independent of the contract exists, the operative question... is whether the defendant owed the plaintiff any legal duty that would support a cause of action in tort, including those duties that are imposed by law.

 Id. at 165, quoting Clark, 379 Mich at 261.

 Plaintiffs cite Girvan v Fuelgas Co, 238 Mich App 703; 607 NW2d 116 (2000), to argue that the parties’ relationship requires the imposition of a duty, but Girvan does not support their position. Rather, in an opinion authored by then Judge Zahra, the Court of Appeals recognized that a gas supplier
has a duty to ensure that its product is delivered safely to the exterior of the premises of the end user but, in the absence of an agreement to do otherwise, that duty does not extend to the inspection of the interior lines, conduits, and appliances over which the supplier has no control. [Girvan, 238 Mich App at 714.]
The Girvan Court relied on caselaw from this Court that recognized that a duty could be imposed on suppliers of dangerous commodities only if the supplier was negligent in performing the function it agreed to perform. See Gadde v Mich Consol Gas Co, 377 Mich 117, 126; 139 NW2d 722 (1966); Kevreson v Mich Consol Gas Co, 374 Mich 465; 132 NW2d 622 (1965); Young v Lee, 310 Mich 42; 16 NW2d 659 (1944). Because the gas supplier in Girvan did not expressly agree to an inspection of the interior gas lines, the Court of Appeals concluded that the defendant had no duty in that regard. And like the defendant in Girvan, defendant installers here did not expressly agree to enter plaintiffs’ premises for the purpose of inspecting the gas line. The dissent, however, suggests that Girvan supports imposition of a duty because Girvan recognized that a “reasonable person should seek expert assistance when dealing with dangerous commodities on the person’s premises” and, according to the dissent, plaintiffs did seek expert assistance from defendant installers to install their electric dryer. Post at 679 n 14. Yet Girvan is irrelevant in this regard because while plaintiffs did seek expert assistance to install an electric dryer, plaintiffs never sought expert assistance with respect to the smell of natural gas and, at the time of installation, defendant installers were not dealing with a dangerous commodity. Thus, we do not “fail[] to recognize” that plaintiffs sought expert assistance to install their appliances. Post at 679 n 14. The dissent has simply mischaracterized the record and our opinion. .

 The dissent makes the same flawed assumption when it asserts that defendant installers had a duty to warn plaintiffs of the gas line because of their “superior knowledge” of “gas lines, appliances, and their installation.” Post at 674-675. In reaching this conclusion, the dissent disregards the limited relationship of the parties, which, as we have explained, in no way imposed a duty on defendant installers to “take reasonable safeguards to protect plaintiffs from harm.” Post at 674. Further, even assuming that defendant installers possessed some superior knowledge, they were under no obligation to warn plaintiffs about the gas line because it was highly visible and defendant installers would have no reason to believe that plaintiffs, the homeowners, would not have realized its dangerous condition. The products-liability case the dissent relies on in support, post at 674-675, is inapposite for this reason, as well as the fact that defendant installers were the manufacturer of neither the gas line nor the dryer.

 Plaintiffs are essentially asking this Court to hold that defendant installers had a duty to warn or otherwise protect them from an observable hazard that was created by a third party (a prior homeowner). But such a holding, which the dissent also advocates, is directly contrary to the common law, which does not “obligate!] one person to aid or protect another” except “where a special relationship exists between a plaintiff and a defendant.” Williams, 429 Mich at 499. We have recognized several special relationships, such as common carriers and their passengers, innkeepers and their guests, and doctors and their patients, but this Court has never held that a special relationship exists between an appliance installer and homeowners or home occupiers. Indeed, the dissent’s reliance on Huhtala v Travelers Ins Co, 401 Mich 118, 130; 257 NW2d 640 (1977), post at 674 n 5 and 676 n 9, for the proposition that defendant installers had a duty to warn plaintiffs about the gas line is unavailing because Huhtala’s discussion of a duty to protect refers to *666 cases in which that duty arose as a result of special relationships. In this case, there being no common-law duty to act, defendant installers had no obligation to act for the benefit of the homeowner or occupiers in regard to hazards created by third parties.

 During her deposition, Marcy testified that she “didn’t know,” in terms of gas and electric, what lines were in the kitchen and that she “kind of assumed Sears did all that.” She stated: “I didn’t know that stuff, details. I thought Sears did that stuff when they came out.”

 Williams, 429 Mich at 499 (emphasis added).

 Id.

 Id.

 Converse v Blumrich, 14 Mich 109, 120 (1866) (citations omitted). Black’s Law Dictionary (9th ed), p 1164, defines “constructive notice” as “[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice oíAlthough neither Patricia nor Christopher testified that they actually saw the kitchen pipes, the fact that the pipes were highly visible in a high-traffic area of the home for nearly a month also supports imputing notice to Patricia and Christopher.

 Deputy Comm’r of Agriculture v O & A Electric Co-Op, Inc, 332 Mich 713, 716; 52 NW2d 565 (1952) (emphasis added). In reaching this conclusion, we have not somehow “confuse[d],” post at 680, plaintiffs’ knowledge of the pipe with knowledge that the pipe was dangerous, but have simply applied the law as it pertains to constructive notice. Indeed, it is the dissent that “confuses,” post at 680, these principles of constructive notice because it would require that plaintiffs had actual notice of the uncapped gas line’s potentially dangerous condition before imputing that knowledge to plaintiffs.

 Groncki v Detroit Edison Co, 453 Mich 644, 656; 557 NW2d 289 (1996) (opinion by BKICKLEY, C.J.).

 Likewise, the Court of Appeals’ reasoning that defendant installers breached a duty to not create a new hazard or make an existing hazard worse by “installing] the dryer in a way that prevented the discovery of the uncapped gas line,” Hill, unpub op at 3, fails for the same reason. Plaintiffs already had notice of the gas line well before defendant installers arrived to install the appliances. It is simply illogical to conclude that defendant installers’ actions prevented plaintiffs’ discovery of the gas line when plaintiffs already had notice of it. Placing the dryer in front of the gas line does not somehow change the knowledge that plaintiffs had already acquired.

 In re Certified Question, 479 Mich at 506-507.

 Id. at 505.

 The dissent suggests that if a duty to warn were imposed, the scope of a defendant’s duty would be limited and workable. However, the dissent essentially agrees that a defendant’s potential duty would extend to all areas of a plaintiffs home that the defendant works in and traverses. And while the dissent attempts to limit an appliance installer’s duty to hazards related to the appliance or its installation, it has not explained how to discern which hazards are related and which are “unrelated.” Post at 678.

 Henry v Dow Chem Co, 473 Mich 63, 83; 701 NW2d 684 (2005).

 Fultz, 470 Mich at 468-469 (emphasis omitted).

 The dissent’s opposite conclusion lacks logic. That the uncapped gas line was concealed from view did not somehow worsen the already dangerous condition of the gas line. While the dissent suggests that a visible danger is less dangerous than an “invisible” one, post at 683, this theory fails under the circumstances of this case in which the character *672 of the gas line remained the same before and after the dryer’s installation and, as the dissent admits, plaintiffs already knew of the pipe’s existence before the dryer’s placement.