*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATHERYN WAHL and ANGELA LANZI,

      Plaintiffs-Appellees,

v

JOHN MOLNAR FUNERAL HOME, INC., doing business as MOLNAR FUNERAL HOME,

      Defendant-Appellant,

and

SHAWN PARCELLS and NATIONAL AUTOPSY AND TISSUE RECOVERY SERVICES, INC.,

      Defendants.

UNPUBLISHED
February 17, 2022

No. 356581
Wayne Circuit Court
LC No. 2020-016442-NZ

Before: RICK, P.J., and MURRAY and SHAPIRO, JJ.

PER CURIAM.

Defendant John Molnar Funeral Home, Inc., d/b/a Molnar Funeral Home (Molnar), appeals by leave granted the trial court's order denying its motion for summary disposition of plaintiffs' tort claims. For the reasons stated in this opinion, we affirm in part and reverse in part.

## I. BACKGROUND

Many of the underlying facts are not in dispute. On March 4, 2019, Richard Wahl (decedent) died from a lung disease. Kathryn Wahl, decedent's wife,[1] contracted with Molnar to

---

[1] Angela Lanzi is Wahl's daughter. While also a plaintiff in this appeal, the interactions at issue primarily involved Wahl. Individual plaintiffs will be referenced by name, and will be jointly referred to as "plaintiffs."

-1-

transfer the body to the funeral home and cremate the remains. Wahl met with Kelli Johnson, Molnar's funeral director, and informed Johnson that she wished to have decedent's body autopsied to determine the cause of death because she suspected the lung disease may have been caused by asbestos exposure from his work as an electrician. For an additional fee, Johnson agreed to rent Wahl a room in the funeral establishment for the autopsy, but she explained to Wahl that Molnar did not perform autopsies. Johnson recommended a local pathologist to perform an independent autopsy, but Wahl instead contracted with defendants Shawn Parcells and his company, National Autopsy and Tissue Recovery Services, Inc. (the "autopsy defendants"), whom she found in an internet search.

The autopsy defendants are based in Kansas and sent a representative to Michigan to perform an autopsy of decedent in the room Wahl rented from Molnar. On March 7, 2019, the representative presented at Molnar's funeral establishment to perform the autopsy. No Molnar employee assisted in the autopsy, and when it appeared to Johnson that the autopsy had been completed, she called Wahl that day, advised her that the autopsy was complete, and asked for permission to cremate the body. The following day, March 8, 2019, Wahl replied with a text message telling Johnson to move forward with the cremation. The body was cremated that day.

In December 2020, plaintiffs filed suit against the autopsy defendants and Molnar. Plaintiffs alleged that the autopsy defendants never provided a report or results of any testing performed on tissue samples taken during the autopsy. They further alleged that Parcells was National Autopsy's only employee and that he was not a board-certified pathologist or a doctor of any kind. As against Molnar, plaintiffs pleaded counts of negligence, intentional infliction of emotional distress (IIED), and negligent infliction of emotional distress (NIED). Plaintiffs alleged that Molnar owed and breached duties to them to determine the qualifications of the representative sent by the autopsy defendants, supervise the autopsy and ensure that the purposes of the autopsy were accomplished before proceeding with the cremation.

In lieu of filing an answer, Molnar moved for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). Molnar argued that it owed no duty to plaintiffs with regard to the autopsy when it was undisputed that none of Molnar's employees were involved in the autopsy and that plaintiffs independently contracted with the autopsy defendants. Molnar also relied on Johnson's affidavit in which she explained the basis for her belief that the autopsy had been completed on March 7, 2019. Specifically, Johnson attested that the representative had said that he performed the autopsy, which was consistent with her "layperson's observations" of incisions to decedent's abdominal cavity as well as jars containing what appeared to be tissue specimens removed from decedent's body. Molnar also argued that plaintiffs' claims were barred by the liability protection afforded to funeral establishments in MCL 700.3209(3).

In response, plaintiffs contended that summary disposition was premature because discovery had not been held. Plaintiffs asserted that discovery would show that Wahl's instruction to move forward with the cremation was caused by Johnson's misrepresentation that the autopsy was successfully completed for its intended purpose, i.e., to determine whether decedent died from mesothelioma. Generally, plaintiffs asserted that Molnar had failed to ensure that the individual who conducted the autopsy was qualified to do so, and then simply assumed that the autopsy and necessary testing was performed. Plaintiffs argued that Molnar owed them common-law duties arising through their contractual relationship. Regarding MCL 700.3209(3), plaintiffs argued that

the statute was inapplicable because Molnar's reliance on Wahl's instruction was not in good faith. Finally, plaintiffs contended that the alleged misrepresentation that the autopsy was successful, combined with the subsequent cremation, was extreme and outrageous conduct.

The trial court decided the motion on the briefs and issued an order denying the motion for summary disposition, noting only "Question of Fact" as an explanation.

## II. ANALYSIS

### A. NEGLIGENCE

Molnar first argues that it is entitled to summary disposition of plaintiffs' negligence claim because it owed plaintiffs no legal duty to determine the qualifications of the representative sent by autopsy defendants, supervise the autopsy or ensure that it was successful. We agree, but conclude that Molnar did owe plaintiffs a duty to accurately report when the autopsy was completed and that discovery is needed to determine if there is a question of fact on that matter.[2]

"To establish a prima facie case of negligence, plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Finazzo v Fire Equip Co*, 323 Mich App 620, 635; 918 NW2d 200 (2018). Whether a duty exists is a question of law. *Hill v Sears, Roebuck and Co*, 492 Mich 651, 659; 822 NW2d 190 (2012). "[A] duty of care may arise by way of statute, a contractual relationship, or the common law." *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 243; 964 NW2d 50 (2020). In determining whether a legal duty exists, courts consider the parties' relationship, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented. *Hill*, 492 Mich at 661.

Plaintiffs' contend that Molnar owed them duties to determine the qualifications of the representative sent by autopsy defendants, supervise the autopsy and ensure that the purpose of the autopsy was completed. However, although plaintiffs distinguish the caselaw relied on by Molnar,[3] they fail to address the factors defined by caselaw for determining whether a duty should

---

[2] We review de novo a trial court's decision whether to grant or deny summary disposition. See *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205; 815 NW2d 412 (2012). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint. *Id*. In evaluating a motion brought under MCR 2.116(C)(10), we consider "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

[3] We agree with plaintiffs that Molnar's reliance on *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004), and *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich

be imposed. See *id*. And consideration of those factors shows that there is no basis for imposing the alleged duties. The parties had a limited relationship. Molnar's duties under the contract were only to provide a room in which the autopsy would occur, clean up afterward, return the body to cold storage, and later cremate the body on Wahl's approval. In other words, Molnar assumed no obligation relating to the performance of the autopsy itself. Nonetheless, plaintiffs seek to impose expansive duties on Molnar to investigate the qualifications of the autopsy defendants selected by plaintiffs and to determine that the autopsy was properly performed. Because Molnar is a funeral establishment that does not perform autopsies, these duties would seemingly require it to hire its own pathologist every time it rented an autopsy room. Plaintiffs make no argument as to why this is a justifiable burden, nor do they explain how it was reasonably foreseeable to Molnar that the independent contractor selected by plaintiffs was unqualified. In any event, we conclude that there is no basis to impose these broad duties on Molnar considering the parties' limited relationship. See *id*. at 662 ("Because only a limited relationship existed, only a limited duty could be imposed, and consequently, it [is] unnecessary to consider the other factors relevant to determining whether a duty existed.").

That said, we conclude that a duty arose from Molnar's contractual obligations to accurately inform Wahl when the autopsy had been completed.[4] This is a limited duty commensurate with the parties' limited contractual relationship. Indeed, Molnar could not have obtained Wahl's approval to cremate the body without first informing her that the autopsy had been completed. Molnar had a duty to use reasonable care in reaching that conclusion. See *Clark v Dalman*, 379 Mich 251, 261, 150 NW2d 755 (1967) ("The basic rule of common law imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others.").

Plaintiff maintains that discovery is needed to determine whether Molnar misrepresented that the autopsy was completed, which then caused Wahl to instruct Molnar to move forward with the cremation. We agree. Whether the autopsy was completed when Johnson made that representation to Wahl is a question of fact. No responsive pleading has been filed, and Johnson's affidavit does not fully explain the basis for her belief that the autopsy was done. Further, plaintiffs have not had an opportunity to depose Johnson and the autopsy representative. Accordingly, as to the claim of negligence relating to the alleged misrepresentation, we affirm the denial of summary disposition.

B. IIED & NIED

---

157; 809 NW2d 553 (2011), is misplaced. Those cases concerned whether a contracting party owed tort duties to a third party. In contrast, the question here is whether a tort duty exists between contracting parties "separate and distinct from their contractual duty . . . ." See *Hill*, 492 Mich at 654-655.

[4] To be clear, Molnar had no duty to determine that the autopsy was properly or successfully completed, but only that the representative had in fact finished his work, before so advising Wahl.

-4-

Next, Molnar argues that its conduct was not sufficiently extreme or outrageous to constitute IIED.

"To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Dalley v Dykema Gossett*, 287 Mich App 296, 321; 788 NW2d 679 (2010) (quotation marks and citation omitted). "[O]nly when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community will liability attach." *Id.* (quotation marks and citations omitted, alteration in original).

Plaintiffs argue that the extreme and outrageous conduct committed by Molnar was its misrepresentation to Wahl that the autopsy was complete, and that discovery will uncover facts that will permit the finder of fact to determine Molnar committed IIED. Because we are remanding for discovery on the alleged misrepresentation, we agree with plaintiff that it is premature to decide to whether Molnar is entitled to summary disposition of this claim. However, we reiterate that this claim requires that Johnson *intentionally* gave false information to plaintiffs; mere negligence is not enough. See *Merriweather v Int'l Business Machines*, 712 F Supp 556, 565 (ED Mich, 1989) ("[M]ere negligence . . . does not constitute conduct which is outrageous in character, extreme in degree and goes beyond all bounds of decency such that it may be regarded as atrocious.").

As for NIED, Molnar does not address this claim separate from plaintiffs' ordinary negligence claim. Instead, Molnar generally argues that it is entitled to summary disposition of the "negligence-based claims" because there is a lack of duty. However, NIED is a distinct claim from ordinary negligence and has its own elements. See *Taylor v Kurapati*, 236 Mich App 315, 360; 600 NW2d 670 (1999). We decline to address the merits of the NIED claim when this issue has not been briefed by Molnar, and therefore affirm the denial of summary disposition as to this claim.

## C. MCL 700.3209(3)

Finally, Molnar argues that, to the extent plaintiffs' claims arise from the cremation itself, those claims are barred by MCL 700.3209(3). We conclude that plaintiffs' remaining claims are not barred by this statute.[5]

---

[5] Questions of statutory interpretation are reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). "The primary goal of statutory interpretation is to give effect to the Legislature's intent." *In re Reliability Plans of Electric Utilities for 2017-2021*, 505 Mich 97, 119; 949 NW2d 73 (2020). Statutes are reviewed "as a whole, reading individual words and phrases in the context of the entire legislative scheme." *Ronnish Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016). "Statutory language should be construed reasonably, keeping in mind the purpose of the act." *People v Zitka*, 325 Mich 38, 49; 922 NW2d 696 (2018) (quotation marks and citations omitted).

Under the Estates and Protected Individuals Code, MCL 700.1101 *et seq.*, certain individuals are given priority to make decisions about funeral arrangements and the handling, disposition, or disinterment of a decedent's body, including cremation. See MCL 700.3206. If there is a dispute, certain parties may file a petition to have the court determine who has authority to make decisions about the decedent's body. See MCL 700.3207. A funeral establishment may rely on those statutory provisions and the instructions of a person having authority pursuant those provisions "regarding funeral arrangements and the handling, disposition, or disinterment of a body and is not civilly liable to any person for the reliance if the reliance was in good faith." MCL 700.3209(3).

It is undisputed that Wahl, as decedent's surviving spouse, had the statutory authority to make decisions regarding the handling of decedent's body. See MCL 700.3206(1), (3)(c). Therefore, MCL 700.3209(3) precludes civil liability for Molnar's reliance on Wahl's instructions if done in good faith. But plaintiffs are not seeking to hold Molnar liable for relying on Wahl's instructions to cremate decedent's body. Rather, plaintiffs seek to hold Molnar liable for what its funeral director told Wahl *before* she instructed the director to proceed with the cremation. And while the statute grants immunity for a funeral establishment's good-faith reliance on instructions regarding the decisions about the decedent's body, it does not provide immunity for misrepresentations made by the funeral establishment. Accordingly, we conclude that the statute does not bar plaintiffs' remaining claims.

## IV. CONCLUSION

We reverse the denial of summary disposition regarding the ordinary negligence count, except as it pertains to the alleged misrepresentation regarding the autopsy's completion. We affirm the denial of summary disposition on the IIED and NIED claims. Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs as neither party has prevailed in full. MCR 7.219.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Douglas B. Shapiro

-6-