*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JASON MIDDLETON,

        Plaintiff-Appellant,

v

MARINOS LAWN CARE, LLC,

        Defendant-Appellee.

UNPUBLISHED
April 09, 2025
9:40 AM

No. 370001
Macomb Circuit Court
LC No. 2021-004271-NO

Before: GADOLA, C.J., and WALLACE and ACKERMAN, JJ.

PER CURIAM.

Plaintiff, Jason Middleton, appeals as of right the trial court's order entered in favor of defendant, Marinos Lawn Care, LLC, after a jury rendered a verdict of no cause of action on plaintiff's claim. We affirm.

## I. FACTS

This is an action alleging negligence. Defendant is a landscaping business that contracted with the City of Eastpointe to perform the lawn care work at Eastpointe's Spindler Park. Plaintiff alleges that on May 6, 2021, he was sitting in a pavilion in Spindler Park when he was struck on his left ear and temple by debris ejected from defendant's lawnmower. Plaintiff alleges that as a result of the incident, he suffered hearing loss, ear damage, and traumatic brain injury, and underwent surgery. Plaintiff further alleges that defendant was negligent by failing to properly maintain and use its equipment, and by failing to warn plaintiff of the danger. Defendant denied that its landscaping equipment caused any flying debris on that day, denied that it caused plaintiff's alleged injury, asserted that plaintiff failed to take reasonable measures to ensure his own safety, and asserted that plaintiff's alleged condition was the result of plaintiff's pre-existing conditions or injuries.

At trial, Plaintiff testified that in 2020 he began to have hearing loss in his left ear after he accidentally punctured his eardrum. He underwent surgery to correct the problem in March 2021, but the surgery was unsuccessful. He testified that while attending a meeting in the park on May 6, 2021, defendant's lawnmower passed close to the pavilion where he was sitting on a picnic

-1-

table, and he suddenly found himself lying on the floor of the pavilion after being hit by flying debris. He testified that he stayed at the meeting after the incident, but left about 15 minutes early and asked the person who had driven him to the meeting to take a picture of the truck used by the mowing crew. He testified that after the incident, the condition of his left ear was worse. Plaintiff thereafter sought further medical care for his ear, and in February 2023 underwent surgery for a cochlear implant.

Danny St. Mary testified that he attended the same meeting as plaintiff on the morning of the incident. He testified that while they were sitting in the pavilion in the park, a lawnmower passed near the pavilion, he heard the lawnmower hit a stick, and the stick "flew out inside the pavilion." He then testified that he did not actually see the stick fly out of the mower, but after he heard the sound of the mower hitting a stick, he saw a stick laying on the ground. St. Mary did not see the stick strike plaintiff, but he saw plaintiff holding his right ear after the mower struck the stick, although he clarified that he was not sure which ear plaintiff was holding. He testified that the meeting continued for another half hour, and plaintiff remained at the meeting; plaintiff did not appear to be hurt, and no one called 911.

Mary Morris testified that she drove plaintiff to the meeting at the park on May 6, 2021, then waited in the parking lot. She testified that about 30 minutes later, plaintiff texted her and asked her take a picture of the landscaping service truck because he had been struck in the head. She testified that when he returned to the car about 10 or 15 minutes later, she could see a red welt on the left side of his head, and plaintiff appeared anxious and excited. She then drove plaintiff to his home; plaintiff did not ask her to call 911 or otherwise help him seek medical care.

Plaintiff's mother, Donna Middleton, testified that plaintiff began to experience hearing loss in December 2020. In March 2021, he underwent surgery to correct the problem, but the surgery was unsuccessful, and he eventually completely lost his hearing in his left ear. She testified that after he was struck in the head by the stick at the park, plaintiff began complaining about pain and ringing in his ear. Although plaintiff stopped working in the family business at the end of 2020, Middleton continued to pay him his full salary. She testified that at the time of the incident in the park and at the time of trial, plaintiff still was not working but she was continuing to pay his salary. She conceded that one of the reasons that plaintiff had stopped working at the family business was that he had conflicts with his father and brothers. Plaintiff acknowledged that he was receiving a salary from the family business, though he was not working there; he testified that his parents planned to sell the family business in the next year or two to enable them to retire.

Before trial, plaintiff's proposed expert, Stephen George, was deposed for the purpose of creating a de bene esse trial deposition. Defendant filed a motion in limine to exclude George's deposition testimony. Defendant contended that George's opinions regarding the alleged incident and the alleged violation of industry standards for operating powered groundskeeping equipment were not based on reliable principles and methods and were irrelevant. Defendant similarly argued that George was not qualified to state conclusions based on principles of Michigan law.

The trial court granted in part and denied in part defendant's motion in limine regarding George's deposition testimony. The trial court permitted George to testify regarding "industry lawncare standards and practices," but precluded George from testifying "as to causation of the

subject incident, whether the accident occurred, or any testimony deemed scientific in nature." The trial court reasoned that George had been in the landscape business for 40 years and could testify regarding industry standards, that he had technical and specialized knowledge that would assist the jury in understanding the evidence, and that therefore his testimony in that regard was admissible under MRE 702. The trial court determined, however, that George was not a safety expert nor an accident reconstructionist, and therefore was not permitted under MRE 702 to testify regarding whether the lawnmower propelled a projectile or whether that was the cause of the alleged incident, which would require the witness to have scientific knowledge that had not been demonstrated.

Based on the trial court's ruling, the parties stipulated to the portions of George's deposition that could be presented to the jury. At the conclusion of trial, the jury found that defendant was not negligent, and the trial court issued its order entering the verdict of no cause of action. Plaintiff moved for a new trial, contending that the trial court erred by excluding the redacted portions of George's testimony. The trial court denied plaintiff's motion for a new trial. Plaintiff now appeals.

## II. DISCUSSION

Plaintiff contends that the trial court erred by excluding portions of plaintiff's expert's testimony regarding whether the incident occurred, the cause of the alleged incident, and any subject deemed scientific in nature. We disagree.

We review for an abuse of discretion the trial court's decision regarding the admissibility of witness testimony. *Lenawee Co v Wagley*, 301 Mich App 134, 161-162; 836 NW2d 193 (2013). A trial court abuses its discretion when it chooses a result that falls outside the range of reasonable and principled outcomes. *Id*. at 162. A trial court also abuses its discretion when its exercise of discretion is premised on an error of law. *Ronnisch Const Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016). A decision on a close evidentiary question generally cannot be considered an abuse of discretion. *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 729; 761 NW2d 454 (2008).

We review for clear error the trial court's factual findings underlying the decision to admit or exclude evidence, *Shivers v Covenant Healthcare System*, 339 Mich App 369, 373-374; 983 NW2d 427 (2021), and review de novo questions of law underlying evidentiary rulings. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). However, "any error in the admission or exclusion of evidence will not warrant appellate relief unless refusal to take this action appears . . . inconsistent with substantial justice, or affects a substantial right of the [opposing] party." *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004) (quotation marks and citation omitted).

Generally, to establish a prima facie case of negligence, the plaintiff must demonstrate that (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the plaintiff suffered damages, (4) and the damages were caused by the defendant's breach of that duty. *Composto v Albrecht*, 328 Mich App 496, 499; 938 NW2d 755 (2019). The element of duty in a negligence action generally is a question of law to be decided by the trial court. *Hill v Sears, Roebuck and Co*, 492 Mich 651, 659; 822 NW2d 190 (2012). The allegation that a defendant failed to comply with industry standards, however, relates to whether a defendant breached the

duty of ordinary care, not whether a duty existed, and therefore the question is one of breach, not one of duty. *Farm Bureau Ins Co of Mich v Blarney Castle Oil Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364960); slip op at 2.

A proponent of evidence is required to establish the relevance and the admissibility of the evidence. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). MRE 702 governs the admissibility of expert testimony, and incorporates the standards for determining the reliability of expert testimony articulated in *Daubert v Merrell Dow Pharm, Inc.*, 509 US 579; 113 S Ct 2786; 125 L Ed 469 (1993). *Danhoff v Fahim*, 513 Mich 427, 445; 15 NW3d 262 (2024). MRE 702 requires the trial court to determine that each aspect of the proposed expert witness' testimony is both relevant and reliable, *id*. at 448, including the underlying principles and methodology, *Elher*, 499 Mich at 22. The trial court may admit expert testimony only if it meets the standard of reliability of MRE 702. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 782; 685 NW2d 391 (2004). At the time of trial in this case,[1] MRE 702 provided:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The party introducing the testimony must establish that "any opinion based on those data [relied upon] expresses conclusions reached through reliable principles and methodology." *People v Lemons*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 163939); slip op at 13-14. The trial court is required to focus on the principles and methodology of the expert, not the conclusions reached. *Id*. at ___; slip op at 13.

In this case, plaintiff presented the deposition testimony of Stephen George, which included testimony regarding industry safety standards for operating lawn care equipment and whether defendant complied with those standards. George's proposed testimony, however, also included conclusions on causation, namely that plaintiff had been injured by debris flying from defendant's mower and that the incident had been caused by defendant's failure to follow industry safety standards. The trial court's order stated that George could testify as a person with specialized knowledge in the field of lawn care, but excluded portions of George's testimony regarding whether the incident occurred, the cause of the alleged incident, and any subject deemed scientific in nature.

Contrary to plaintiff's argument on appeal, we conclude that the trial court correctly discharged its duty as gatekeeper of the expert's testimony. Plaintiff sought to introduce testimony

---

[1] This case was tried in December 2023, with a verdict issued by the jury December 15, 2023. MRE 702 was amended September 20, 2023, effective January 1, 2024, and again amended March 27, 2024, effective May 1, 2024.

by George that debris from the mower struck plaintiff, and that the only way that could occur was if defendant had been negligent. The trial court observed that that testimony would require an accident reconstructionist with knowledge of the scientific bases regarding projectiles. The trial court reasoned, in pertinent part:

> All right. Plaintiff seeks to use Stephen George to establish industry standards for operating power groundskeeping equipment, as well as how the alleged incident occurred. While George is in the landscape business, and he was in the landscape business for 40 years, according to his testimony, and with landscape design build and safety issues, he is not a safety expert or an accident reconstructionist. I think everyone is in agreement with that. George testified that he never completed OSHA or MIOSHA classes, and Defendant is contending under *Daubert* [*v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993)] that Mr. George would be unable to testify pursuant to Michigan Rule of Evidence 702, that his opinions are not the product of reliable principles, methods, or the proper application of those principles and methods to the facts of the case, is essentially the defense argument.

> Plaintiff contends that his years of experience in being – in that industry and being responsible for [the] safety of employees does allow for him to testify as to those issues, and, in fact, he reviewed facts which established a foundation for his opinions, that being deposition testimony, photos, videos of the area, and state and federal regulations regarding landscaping equipment.

> Plaintiff contends that George has technical and specialized knowledge that would assist the jury to understand the evidence and to determine facts at issue, yet there's really three different components that Plaintiff intends to introduce this expert as an expert in. Number one is the industry standards, which we just discussed, and the Court finds that such testimony is characterized as specialized knowledge under MRE 702. This is not scientific knowledge or testimony in terms of industry standards, and the Court does find that Mr. George is qualified to testify as to what those industry standards are based upon his years of experience, and his familiarity in the field. He – according – this is the Plaintiff's brief, but that he has training in safety measures used in the landscape business, that he has reviewed OSHA regulations, is familiar with safety – aging safety and health, U.S. Consumer Products Safety Commission [standards regarding] riding a lawn mower, and that he has engaged in educational services regarding landscape lawn and maintenance safety.

> So, the Court does believe that under that specialized field that he can testify as to, again, industry standards. Part of that, the Plaintiff proposes, is that he can testify as to assessments of proper operation, and again, the Court finds that such testimony is characterized as technical or specialized knowledge under MRE 702, and not scientific testimony. For instance, he certainly can testify as to a lack of – what – what proper guarding is, whether – whether the Defendant should have been mowing further away from the Plaintiff and the others sitting in the pavilion, whether a lawn mower shoot was improperly pointed, whether the shoot – whether

a walk through should be done or not, whether training manuals should be translated, and –

However, aside from assessments of proper operation, as well as qualification, the Plaintiff wished to introduce this expert for testimony as to causation, the manner in which the accident occurred, and whether, in fact, this accident did occur. Plaintiff states that the accident did happen based upon the deposition testimony of Plaintiff, Danny St. Mary, and Mary Morris, along with photos and videos of the accident scene. However, the Court does not believe that this testimony is appropriate because it's scientific in nature dealing with physics and aerodynamics and accident reconstruction. Although Mr. George may be able to testify as to industry standards, this proposed testimony relates to whether the lawn mower actually propelled a projectile to strike the Plaintiff. The Court does not see how Mr. George's background places him in a better position than the members of the jury to make that assessment. Under MRE 702, Plaintiff is unable to demonstrate what reliable principles or methodologies upon which Mr. George relied to opine that the lawn mower actually struck an object which then propelled it in a manner that caused it to strike the Plaintiff. There's been no mathematical equations, or – or principles of physics, or anything of that nature that has been proposed to the Court in which he can testify as to that fact.

Now, when you get to the practicalities of this Court's ruling, I would direct the parties to page 19 [of George's deposition]. There is testimony where the witness had said, okay – well, the question is, okay, all right this is line number 16 – and from your review of deposition transcripts and everything else, do you have an understanding that the shoot was pointed toward people in the pavilion? That's what I understand for the - for him to get hit, it'd have to be. . . .

* * *

He is, again, making an – an assumption based on how the projectile was – was propelled, I suppose, and the way that the Plaintiff was struck. The Court does not find that to be appropriate. Certainly, he can testify as to what witnesses had indicated in – in terms of the positioning of the shoot, but to - to gauge how the shoot or the guard was attached, based upon the manner in which it struck the Plaintiff, would be completely inappropriate, and would be, as the Court had indicated, an accident reconstruction. Those type of – it is not supported by facts in evidence. The Court does not believe it's appropriate, and that should be stricken. I'm not gonna go through every line.

* * *

The parties are gonna have to go through every line, based upon the Court's ruling. But that is an example of what – what the Court believes would be inappropriate testimony.

I -I think you can go to page 17 where he says – line 13 – okay, so those, I guess, are two – two separate ones. The lack of guarding that you believe was not there, and the answer is . . . I believe it was not – more likely than not because the guy that got hit was five feet up in the air seated on top of that table. Again, this is him opining as to how the accident occurred, why it occurred. It would be in appropriate, and the Court would be striking that type of testimony.

So, again, the parties are gonna have to go through the transcript and strike out the testimony based upon this Court's ruling.

For George to state an opinion regarding causation and negligence would require George to rely on scientific expertise he does not possess. Because George was not qualified as a scientific expert, and because there was no demonstration of underlying scientific principles supporting his conclusions regarding causation, the trial court did not abuse its discretion by excluding a portion of George's testimony, and plaintiff is not entitled to a new trial.

We also observe that the record supports the jury's finding of no cause of action even apart from the issue of the testimony of plaintiff's expert. A reasonable juror could conclude that plaintiff's testimony lacked credibility and was unpersuasive that the condition of his left ear was caused by an event on May 6, 2021. He testified that on that day, he suddenly found himself lying on the ground in the park after apparently being hit in the left side of the head. By contrast, Danny St. Mary testified that he heard the mower hit a stick, but did not see anything hit plaintiff, plaintiff did not appear to be injured, and plaintiff remained at the meeting for another 30 minutes without leaving or seeking medical care.

Mary Morris testified that about 30 minutes after she drove plaintiff to the meeting at the park on May 6, 2021, plaintiff texted her and asked her take a picture of the landscaping service truck because he had been struck in the head. When he returned to the car 10 or 15 minutes later, she saw a red welt on the left side of his head, and plaintiff appeared anxious and excited, but plaintiff did not ask her to help him seek medical care.

Plaintiff and his mother both testified that he injured his ear in late 2020 and experienced hearing loss by December 2020. In March 2021, he underwent surgery on his left ear that was unsuccessful, and that his medical condition was still unresolved on the day of the incident. He testified that he had many medical bills to pay, that he had not been able to resume working in the family business, and that his parents were planning to sell the family business in the near future. His mother testified that since December 2020, the business had been paying plaintiff his full salary even though he did not work there, and that she and her husband hoped to retire eventually.

The record not only fails to establish that plaintiff was hit by debris from the mower on May 6, 2021, it also fails to establish that plaintiff's left ear injury stemmed from an impact on that day. The record instead suggests that plaintiff suffered an injury to his ear in 2020, the injury had not been resolved at the time of the incident in 2021, and he and his mother were both very concerned about his financial situation in light of his parents' plan eventually to sell the business that was supporting plaintiff. The record thus supported the jury's verdict of no cause of action even if George's entire testimony had been admitted. As noted, "any error in the admission or exclusion of evidence will not warrant appellate relief unless refusal to take this action appears . . .

inconsistent with substantial justice, or affects a substantial right of the [opposing] party." *Craig*, 471 Mich at 76 (quotation marks and citation omitted). We conclude that the trial court did not abuse its discretion by excluding the testimony of plaintiff's expert witness regarding whether the incident occurred and whether it was caused by defendant's negligence.

Affirmed.

/s/ Michael F. Gadola
/s/ Randy J. Wallace
/s/ Matthew S. Ackerman